### John F. Cock, Adm'r, v. Carson and Lewis.

1. CLAIMS AGAINST AN ESTATE—PARTNERSHIP.—A surviving partner running a steam-mill which belonged to the partnership, under authority of the Probate Court, bought new boilers for the mill: *Held*, That the estate was not bound, except upon the survivor accounting for the profits of the mill and showing that the estate had been benefited by such purchase. An assignee holding the claim could only charge the estate by making the same proof.
2. SURVIVING PARTNER.—A surviving partner cannot bind the estate of a deceased member of the firm for debts incurred by him subsequent to its dissolution by the death of a member of the firm.

APPEAL from Parker. Tried below before the Hon. Charles Seward.

The facts are substantially given in, the former appeal in this case, 38 Tex., 285, 286, 287.

*A. J. Hood*, for appellant.

· *Terrell & Walker*, for appellees, cited Paschal's Dig., 1328, 1329; Price v. McIver, 25 Tex., 770; Holliman v. Rogers, 6

Tex., 97; 4 Kent, 270, 371; Campbell *v.* Mesier, 4 Johns. Ch., 338.

MOORE, ASSOCIATE JUSTICE.—There is an error in this case apparent on the face of the petition, and manifesting itself in every stage of its progress to the final judgment, for which it must be reversed.

The appellees brought suit to establish the notes and accounts described in their petition, as valid claims against the estate of which appellant is the legal representative. One of these claims, at least, purports to be the individual debt of the surviving partner of the firm of which appellant's intestate was a member. That a partnership is ordinarily dissolved by the death of one of its members, and that the surviving partner has no authority as such to create new obligations against the firm, or by his subsequent contracts and obligations to bind the estate of the deceased partner, is too well established to admit of discussion. And it is not insisted by appellees that the surviving partner was authorized merely by reason of his survivorship to charge the estate with the debts and liabilities contracted by him subsequently to the dissolution of the firm. But it is claimed that by reason of the fact that the mills belonging to the firm were, by an order of the Probate Court, made at the instance of the administrator, placed in the exclusive control of the surviving partner, "untrammeled by any person, to repair and keep said mills running and pay running expenses, and to apply the net proceeds to the liquidation of the just claims against the said firm, conducting the business at his own discretion for the use and benefit of said firm," that the debt to which reference is had, contracted by the survivor for boilers which, it is alleged, were necessary to keep said mills running, stands upon a different footing from ordinary contracts made by the surviving partner, or liabilities incurred without the sanction and authority of the court. The debt, it is said, was contracted by authority of the court for the benefit of the estate

as well as the survivor, and therefore the estate should, in equity and justice, bare one half the burthen of it. We do not controvert the rule of equity invoked, if the facts alleged in the plaintiff's petition, or developed in the progress of the case, were sufficient to authorize its application to the demand in question.

The record shows that the boilers were purchased on the individual credit and responsibility of the surviving partner. He did not assume to contract for or bind the estate; no reference to the estate, nor supposed liability on its part, was made in the contract creating the debt or the security given for its payment. The vendor did not sell the boilers on the faith and credit of the estate, nor look to it for payment for them. If the surviving partner had paid for them, as he undertook and bound himself to do, unquestionably he could have only called upon the estate to contribute for their payment on accounting with it for the use and profits made from the mills, while in his exclusive possession and control. And if the creditor or his assignees can hold the estate liable for the debt or any part of it, it is only through the equity of the surviving partner, if he had paid it, and they must assert it subject substantially to the same equitable conditions and restrictions resting upon him.

Debts contracted by the firm, although the surviving partner is entitled to the use and control of the partnership assets, and it is primarily his duty to settle the partnership liabilities, may unquestionably be established as valid claims against the estate, and payment of them enforced against it, without regard to the rights and liability of the estate and survivor, as between each other. But debts contracted and liabilities incurred by the survivor subsequent to his partner's death, stand upon an altogether different footing. The estate is neither in law nor in equity bound by such contracts merely, but if liable on them, it is so only where it is made to appear, by all the facts and circumstances surrounding the transaction, that the estate has been benefited therefrom, without any

corresponding outlay or loss to it, and therefore, in equity and good conscience, should bear its proportion of the corresponding burthen. In a suit to enforce such a demand the surviving partner would seem to be a necessary party; if not, certainly the creditors, whose claim against the estate must ordinarily grow out of his equities, must take upon themselves the burthen of proving the facts which would have been necessary for him to establish if he had paid such debts and was seeking to charge the estate with the half of them. The theory of appellees' action, and the grounds of their recovery on the claim to which we are here referring, is that the mere fact that the debt was contracted for the repair and improvement of the partnership property, rendered the estate in equity responsible for its *pro rata* part of it, irrespective of the power or authority of the survivor to bind the estate or create debts against it, and irrespective of the further fact that the profits realized by the survivor from the use of the mills may have greatly exceeded the outlay for such improvements, as well as for all expenses otherwise incurred. Equity sanctions no such rule or principle. The result of doing so, disguise it as we may, would be that the surviving partner could, in many instances, contract for and bind the firm, notwithstanding its dissolution.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.