## B. F. NICHOLSON AND CHARLES YAEGER V. W. SHOWALTER.

### No. 3172.

1. **Disqualification of District Judge.** — If it could be admitted that a judge can not sit in a suit of another person for debt against a debtor who at same time was owing the judge, such disqualification would cease to exist upon the payment of the debt to the judge, or when the debt was transferred without recourse. The fact that the payment or transfer was made for the purpose of removing the disability would not affect the result.

2. **Transfer of Stock by Shareholder of Failing Corporation.**—We can see no good reason why transfers of unpaid stock of a corporation made in good faith and with the consent of the corporation should not be upheld.

3. **Disqualification of Judge.**—A failing corporation was in hands of receivers. The district judge had owned stock in it and was an officer. Before the trial of a suit against the corporation was had the judge had disposed of all stock, and had fully severed connection with its management. *Held,* that the possibility of suit against him for acts ultra vires would not disqualify him as judge.

APPEAL from Webb.   Tried below before Hon. A. L. McLANE.
The opinion states the case.

*Nicholson, Dodd & Mullally,* for appellants.—1. The presiding judge being disqualified on account of interest as a creditor of the Laredo Improvement Company (the defendant), had no jurisdiction or power to take and entertain jurisdiction in said cause.   Cook on Stock and Stockholders, part 4, chap. 39; Const., art. 5, sec. 11; Rev. Stats., art. 1090.

2.   The judge of the court being disqualified on account of being a creditor of the Laredo Improvement Company, whose estate, by virtue of plaintiff's suit, was in the hands of the court, through its receivers, for administration and distribution, was incompetent and incapacitated to sit in said cause.   Taylor v. Williams, 26 Texas, 584, 585; Newcome v. Light, 58 Texas, 141; Moses v. Julian, 84 Am. Dec., 114, and notes.

3.   The judge having so found himself disqualified on account of interest as a creditor, such incompetency could not be removed by consent of parties.   Chambers v. Hodges, 23 Texas, 109, 113; Wynns v. Underwood, 1 Texas, 48; Oakley v. Aspinwall, 3 Conn., 547.

4. The disqualification of the judge on account of his being one of the creditors, if removable at all, could not be restored by the interested parties purchasing and taking transfers to the claims in which the judge was interested.

5. If the judge has any—the slightest—interest in a cause, he is disqualified from siting in it. Const., art. 5, sec. 11; Rev. Stats., art. 1090; Taylor v. Williams, 26 Texas, 584, 585.

*Atlee & Earnest* and *W. Showalter*, for appellee.—1. If it was true that Judge McLane was a creditor of the Laredo Improvement Company, he was not thereby disqualified to try this case and give judgment as he did. McFaddin v. Preston, 54 Texas, 403; Childress v. Grim, 57 Texas, 56; Burks v. Bennett, 62 Texas, 277.

2. If it be true that the judge was a debtor of the defendant at the time of this trial, or was liable to defendant as a stockholder or otherwise, then still he was qualified to try this case. If A owes B a debt, and the judge owes A a debt, the judge would not thereby be disqualified to try the case between A and B. The judge has no direct interest in the subject matter of the suit.

Shares of stock are personal property, and when the same are transferred the liability of the transferrer ceases, and the transferee not only succeeds to his rights but to his liabilities so far as the stock is concerned. Rev. Stats., arts. 590, 592, 593, 594, 595; Webb v. Upton, 91 U. S., 70; Pullin v. Upton, 96 U. S., 328; Angell & Ames on Corp., 533; 2 Mora. on Corp., 858; Thomp. on Liability of Stockholders, 210–214.

HENRY, ASSOCIATE JUSTICE.—This was a suit for debt, brought by appellee against the Laredo Improvement Company, a private corporation, alleged to be insolvent. Upon the application of the plaintiff receivers of the corporation were appointed. Subsequently the receivers made themselves parties defendant to the cause, and filed an answer as such. A judgment for his debt was rendered in favor of the plaintiff against the corporation, to reverse which the receivers prosecute this appeal.

It is contended that the judgment is void on account of the disqualification of the presiding judge. As both parties agree that this is the only issue presented for our decision, we will confine this opinion to that question, without considering others suggested by the record.

The first objection is, that the presiding judge was disqualified on account of interest as a creditor of the Laredo Improvement Company. The substance of the evidence on that point was, that said corporation was insolvent, and that after it had become so it was indebted to a private banking concern of which the judge was a member, and also to a private corporation in which he was a stockholder. The debt due

to the corporation had been paid when the judgment in this cause was rendered, and before that time the debt to the banking firm had been sold and transferred, without recourse, to a third party.

If it could be admitted that a judge can not sit in a suit of another person for debt against a debtor who at the same time owes the judge, such disqualification must unquestionably cease to exist when the debt to the judge has been paid or transferred without recourse. The fact that the payment or transfer was made for the purpose of removing the disability would not affect the result. It does not come within the rule that jurisdiction can not be conferred by consent. We do not intend to intimate that the mere fact that the judge is a creditor of one of the parties to a suit against whom a judgment is sought that may affect his pecuniary ability is a disqualification.

The other objection is stated in the following assignment of error: "Because the Hon. A. L. McLane having once been a shareholder in the defendant the Laredo Improvement Company, and one of its officers and directors, when transactions were authorized ultra vires, and by which he as said officer and director became liable to respond in damages for such illegal acts, is and was incompetent and incapacitated to sit in the above cause, wherein all such questions may arise for adjudication."

Affidavits were made in support of the objection. The presiding judge filed the following affidavit:

"*No. 805. Nicholson & Yeager, Receivers, v. The Rio Grande National Bank et al.*—A. L. McLane, being duly sworn, says: That he is the same person who is district judge of the Forty-ninth Judicial District. That his connection as a stockholder in and officer and director of the Laredo Improvement Company is in substance as follows: The company was organized sometime in the year 1888, with an authorized capital of $100,000, all of which he believes was subscribed for and 10 per cent paid into the treasury. He subscribed for 500 shares and paid in $500 in cash, and received one certificate of stock for the said 500 shares on the 8th day of November, 1888, being certificate numbered 1. On the 30th day of November, 1888, he transferred said certificate, in writing by indorsement thereon, to J. M. Hamilton, in good faith and for the sum of $625 in cash paid to him by the bank where the purchase was paid for Hamilton. This certificate of stock is pasted to its stub in the certificate book of the company and marked on its face, 'Cancelled.' In March, 1889, the capital stock of the company was increased to $1,200,000, and on the 15th of April, 1889, he bought from the company 665 shares of stock, paying $665 therefor in real estate in Laredo, and received one certificate of stock for the said 665 shares; that on the 18th day of June, 1889, he transferred said certificate, by indorsement in writing, to William Oliver, in good faith and

for the sum of $764.75 in cash paid by said Oliver; that said certificate is numbered 106, and is pasted to its stub on the certificate book of the company, and marked on its face in red ink as follows: '6–24–'89, cancelled, and 265 and 266 issued;' that he was elected and acted as treasurer of the improvement company from August, 1888, to about June 1, 1889; that he was elected and acted as vice-president from July 12, 1889, to August 11, 1889, after which time he was in New York City until November 21, 1889, and had no further connection with the company save as hereinafter stated; that in August, 1889, the stockholders of said company elected a new board of directors; that the two certificates of stock above referred to represent all of the stock of the company for which he in any manner subscribed or became the owner of or had any interest in, from the time of the organization of the company up to the present time, save as hereafter stated; that said Hamilton was at the time of transfer considered a man of means and his credit at the bank was good; that he does not know anything about the financial standing of William Oliver at the time he bought the 665 shares.

"That on the 30th day of July, 1889, he executed two notes as vice-president of the company, for $500 each, payable to S. M. Jarvis, for lots bought from Jarvis by the improvement company; that said notes were paid at maturity and are now in possession of the receivers; that the certificates of stock issued to him, to-wit, numbered 1 and 106, were transferred on the books of the company shortly after he sold them, and other certificates issued by the company in lieu thereof to the purchasers or their assigns; that during the time that he was connected with the improvement company its credit was good, and the shares of the company were in great demand among the public and the stockholders, and the shares were readily sold at a premium.

"That he believes all of the shares were subscribed for; that sometime during the year 1890 an assessment was levied of $1 per share and a call made on the stockholders to pay the same, this being the second assessment and call; that on the 8th day of September, 1890, the directors at a meeting forfeited a large amount of the stock to the use of the company, including the amount already paid in on such stock; that he is informed that the stock issued to his assignees in lieu of the shares conveyed by him was also forfeited to the company and afterward offered for sale by the company; that on July 13, 1889, he executed two notes for the improvement company, as its vice-president, for the sum of $5000 each, payable ninety days after date, to the San Antonio National Bank; that the said notes have been paid and are now in the possession of the receivers; that the notes given in renewal are also in the possession of the receivers, bearing on their face the stamp of the San Antonio National Bank and the word 'Paid,' in red ink.

"That up to the time he ceased to be connected with the company its credit was good, its property and its then market value was greatly

in excess of its cost to the company, and a large number of its stock-holders, holding large blocks of stock, were men of wealth and able to pay the full value thereof, and he believes the company was solvent and able to pay all of its indebtedness then existing on the 11th day of August, 1889.

"That about the month of June, 1890, the improvement company had passed into the hands and control of Thomas W. Dodd, J. O. Nicholson, and J. F. Mullally, who are the attorneys in this cause, and of C. F. Yeager, one of these receivers, and J. M. Hamilton and Henry Fisher and others as directors of said company. That sometime during the month of November, 1890, the said improvement company, being unable to pay its debts, and not having funds sufficient to pay its running expenses, suits having been filed in the courts to compel payment of its debts and to foreclose liens, the said parties having control of the company, acting with other large stockholders, verbally solicited affiant to assist them in reorganizing the affairs of the company, representing that the stockholders had agreed to pay up 30 per cent on their stock if affiant would subscribe to stock and take the office of vice-president and manager, and that they believed that they could secure subscriptions to the forfeited stock of the company to the amount of $50,000 to be taken by the citizens of Laredo.

"That he agreed verbally, and not in writing, to accept the office of vice-president, and to subscribe for 100 shares of the stock, on condition that the then stockholders paid into the treasury of the company the 30 per cent, and on condition that the $50,000 of stock was subscribed for by the citizens of Laredo; whereupon, on the 7th day of November, 1890, he was elected a director of said company and a member of the executive committee and vice-president.

"That the next meeting held after the 7th day of November was on November 21, 1890; that he was then informed of the intention of the directors to levy an assessment to compel the stockholders to pay into the treasury the 30 per cent which he had before then been informed was to have been paid in voluntarily by the stockholders on condition of his becoming a director, etc.; that only 1500 shares had been subscribed for by the citizens of Laredo, and such subscriptions were only on condition that the holders of 75 per cent of the outstanding stock would agree in writing to pay immediately the amount in which they were in arrears to the company on the second call for 10 per cent on their stock, which was due and payable September 6, past, and also to pay 20 per cent additional on or before January 1, 1890.

"That he was then asked to subscribe to the 100 shares which he had agreed to take, so that he could qualify as a director and vote; that he declined to do so, or to have anything further to do with the company; whereupon his resignation was tendered and accepted, to take effect immediately.

"That he did not accept or receive the certificate for 100 shares, nor pay any sum thereon; that it appears from the book of certificates that said certificate has not been detached from its stub, but the same is marked in red ink across the face thereof, 'Void—not issued—not taken.'

"That the company received no credit from any one on account of his connection with the company from November 7 to November 21, 1890, and no one has been injured by reason thereof, and that a few weeks thereafter the property of the company was placed in the hands of receivers.                    "A. L. McLANE."

Among other things, the affidavits filed by the receivers state, "that the said J. M. Hamilton and the said J. P. Flynn, to whom the said A. L. McLane, judge of this court, transferred his said stock in the capital of the said Laredo Improvement Company, are now notoriously insolvent and wholly irresponsible; and that the said Flynn, at least, was insolvent and irresponsible when said stock or shares were transferred to him by said A. L. McLane, judge of this court;" and "that the total indebtedness of the said Laredo Improvement Company on the 24th day of June, 1889, the day when the said A. L. McLane, judge of this court, transferred 415 shares to J. M. Hamilton, and 250 shares to J. P. Flynn, was about $110,000, as appears from an examination of said books and papers of the said Laredo Improvement Company; and that, as it appears from the books and papers of said improvement company, it was at the time of said transfer of stock in an embarrassed condition, if not wholly insolvent and unable to pay its debts, and which debts then existing, when paid, were paid with borrowed money, and which borrowed money constitutes and forms part of the present liabilities of the Laredo Improvement Company, as these receivers believe and here charge to be true."

The affidavits read by the receivers also contain statements of some specific transactions of the Laredo Improvement Company which occurred while Judge McLane was present and acting as a director of the corporation, but which do not disclose any facts showing the existence of a personal responsibility against McLane.

The judge, in consideration of all the evidence offered, decided that he was not disqualified, and that it was his duty to take jurisdiction of the cause.

The American rule in regard to the sale of shares of stock is stated as follows by Thompson in his work on the Liability of Stockholders: "A transfer of shares in a failing corporation made by the transferrer with the purpose of escaping his liability as a shareholder, to a person who from any cause is incapable of responding in respect of such liability, is void as to the creditors of the company and as to other share-

holders, although as between the transferrer and the transferee the transfer may have been out and out." Sec. 15.

We can see no good reason why transfers of unpaid stock made in good faith and with the consent of the corporation should not be upheld. And, we think that in regard to the transactions referred to in the record before us, it will be time enough for the judge to hold himself disqualified when a suit is brought against him to recover a personal judgment on account of such transactions.

The judgment is affirmed.

*Affirmed.*

Delivered January 22, 1892.