**ROBERTSON v. SMITH et al.     (No. 1065.)**

(Court of Civil Appeals of Texas.     El Paso. March 25, 1920.     Rehearing Denied April 22, 1920.)

1. **Adverse possession ⊕⟷27 — Evidence held not to show that purchaser had recognized superior title.**

In action by purchaser at vendor's lien foreclosure sale, evidence *held* to show that purchaser during his possession for the prescriptive period did not recognize a title in third persons superior to that of vendor under which he was holding.

2. **Adverse possession ⊕⟷25, 63(5), 63(7)— Possession under executory contract adverse to all except vendor.**

Purchaser's possession under an executory contract is adverse to all the world, except the vendor or one who stands by privity of contract in a similar relation to him as vendor, and is not adverse to his vendor until the relation of vendor and purchaser is disclaimed or repudiated by one of the parties with notice to the other.

3. **Adverse possession ⊕⟷25—Purchaser's possession for prescriptive period held to give vendor good title.**

Purchaser's possession for prescriptive period without recognizing an outstanding title superior to that of vendor under which he was holding *held* to give vendor good title as against third persons, where purchaser did not during the prescriptive period openly and continuously manifest the purpose to disclaim against the title under which he entered upon the land by some act manifesting an intention to repudiate the relation of vendor and purchaser, notwithstanding a mere mental reservation or intention or declaration that such possession was not held against third persons.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Action by J. B. Robertson against H. W. Smith and others. Judgment for defendants, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Turney, Burges, Culwell, Holliday & Pollard, of El Paso, Felix H. Robertson, of Crawford, and J. D. Williamson, of Waco, for appellant.

Sayles & Sayles, J. R. Stubblefield, and Earl Conner, all of Eastland, for appellees.

WALTHALL, J. This is an action in trespass to try title, brought by J. B. Robertson against H. W. Smith, C. U. Connellee, and Jacob Lyerla, residents of Eastland county, Tex., and against Georgia V. Halliday, Warren H. Mitchell, Georgia E. Benton, Ervin Dick, Mary E. Barrett, Delia Ewell, T. J. Harper, C. H. Harper, Erin Harper, Henry F. Harper, James A. Harris, Kate Worrill, Josephine Worrill, Jeraldine Worrill, John C. Worrill, the unknown heirs of Sarah G. Martin, and C. W. Taylor, whose residences are alleged to be unknown, and against the unknown heirs of all of the several parties named whose residences are alleged to be unknown. The suit in brought to recover two tracts of land of 101⅕ and 43⅓ acres, respectively, out of the Washington Mitchell survey in Eastland county. Appellant claimed title to each of said tracts of land under the 5 and 10 years' statutes of limitation. The defendants cited in person appeared and pleaded not guilty, and the defendants cited by publication answered by counsel appointed by the court and pleaded not guilty.

The case was tried before the court without a jury, and judgment was rendered that plaintiff taken nothing, and that defendants go hence without day. The court filed findings of fact and conclusions of law. For a more perfect understanding of the issues in the case, we reproduce the findings of fact and the one conclusion of law of the trial court, which form the basis of his judgment:

"The court finds that on November 1, 1899, Felix H. Robertson conveyed to J. S. Browning 101⅕ acres of land out of the Washington Mitchell survey by general warranty deed.

"The court further finds that on December 1, 1903, Felix H. Robertson conveyed to J. S. Browning 43⅓ acres of land out of the Washington Mitchell survey of Eastland county, Tex., by general warranty deed.

"The court further finds that in said two deeds of conveyance from Felix H. Robertson to J. S. Browning certain vendor's lien notes were given as security part of the purchase money of said land, being signed by J. S. Browning and payable to Felix H. Robertson.

"The court finds that on October 15, 1903, J. S. Browning conveyed by general warranty deed to C. U. Connellee the two tracts above

mentioned, to wit, 101⅕ and 43⅛ acres of land out of the Washington Mitchell survey of land, in which the said C. U. Connellee assumed the payment of the vendor's lien notes therein stipulated.

"The court further finds that in October, 1915, a judgment was rendered in the district court of McLennon county, Tex., Seventy-Fourth judicial district of Texas, in favor of the Provident National Bank, foreclosing the lien on the notes described, as against C. U. Connellee, and against Felix H. Robertson, but no personal judgment was taken as against C. U. Connellee on said notes.

"The court further finds that on December 20, 1915, an order of sale was issued out of said court, in pursuance of said judgment, directed to the sheriff or any constable, of Eastland county, Tex., and that the sheriff of Eastland county, Tex., levied upon the above-described land in March, 1916, and advertised the same for sale, in a legal manner, posting notice, as required by law, and sold same to J. B. Robertson on April 4, 1916.

"The court further finds that through some misunderstanding on April 4, 1916, the sheriff of Eastland county, Tex., refused to execute deed to J. B. Robertson at that time, and that later on, after notice duly served on sheriff of Eastland county, Tex., ordering and compelling and directing him to make his returns, and execute a deed to J. B. Robertson, which was done, and said deed was executed as bearing date April 4, 1916.

"The court further finds that in a certain suit in the district court of Eastland county, Tex., No. 515, styled D. C. Hill v. Lafoon and Others, the defendant herein, one Martin, was adjudged to have an interest in the Washington Mitchell survey.

"The court further finds that Felix H. Robertson never at any time held deed or judgment vesting a fee title to any part of the Washington Mitchell survey.

"The court further finds that C. U. Connellee has possession of the two above described tracts of land from and including the year 1904, up and including the year 1915, and until April 4, 1916, when he relinquished possession of said land to one H. W. Smith, who is defendant herein.

"The court further finds that C. U. Connellee has possession, and during his possession, paying taxes on said land, recognized a superior, outstanding title in the heirs of Washington Mitchell, as described in judgment in suit No. 515, styled D. C. Hill v. ——— Lafoon and Others.

"The court further finds that during and including the years 1903 to 1908, the defendant C. U. Connellee, by different letters and verbally also, urged and insisted that the said Felix H. Robertson secure two deeds of conveyance from the heirs lawfully interested in said land, in order that chain of title might be straightened out, all of which said Felix H. Robertson failed to do."

The court made three other findings of fact, to the effect that the two deeds from Robertson to Browning and the deed from Browning to Connellee above mentioned were duly recorded, giving the dates of their rec-

ord as occurring shortly after their execution.

The trial court made the following conclusion of law:

"The court concludes as a matter of law that, C. U. Connellee having had possession of said land and paying taxes thereon, but not claiming the same against the legal owners, limitation did not run while in possession of C. U. Connellee, he recognizing an outstanding and superior title to said land, and that, the plaintiff in this case having pleaded the statutes of limitation, his title to said land would hold through the defendant C. U. Connellee, if it held at all, and plaintiff is not entitled to recovery of land in controversy through his pleas of limitation, the evidence having failed to show that said C. U. Connellee claimed said land as against the superior, outstanding title of the heirs of Washington Mitchell."

Appellant's assignments of error are all directed, either directly or indirectly, to one finding of fact by the trial court and to the one conclusion of law based thereon. The one finding of fact is that C. U. Connellee has possession (evidently meaning the lands in controversy), and during his possession, paying taxes on said land, recognized a superior outstanding title in the heirs of Washington Mitchell, as described in judgment in suit No. 515, styled D. C. Hill v. ——— Lafoon and others. That suit was tried and decided June 20, 1895, and the land here in controversy was in that suit recovered by and set aside to the heirs of Washington Mitchell.

Appellant, under said two assignments, presents several propositions, briefly, to the effect that the recorded warranty deeds from Robertson to Browning and from Browning to Connellee, and their entries and holding thereunder, as a matter of law, are notices to all the world that Connellee is asserting superior title in himself under said deed, and that his actual and visible appropriation of the lands by his possession under said deeds is hostile to all others; that Connellee's possession under the executory contract of sale expressed in the recorded deeds inures to the benefit of Robertson, which cannot be affected by any verbal statements or undisclosed mental reservations of Connellee; that nothing short of a disclaimer or repudiation of the title under the deeds under which he was holding, brought home to Robertson, or a surrender of his possession of said lands to Robertson, could have the effect to stop the running of the statute in favor of Robertson; that the evidence does not disclose that Connellee ever disclaimed or repudiated the title under which he was holding, or surrendered possession; but that the evidence does show to the contrary that Connellee during the prescriptive period did not disclaim, and did not repudiate title under which he held possession, and did not surrender possession, but held possession for

more than 10 years, and until the foreclosure of the vendor's lien was decreed by the court in a suit on the notes. A reproduction of the evidence would extend the opinion to too great length, and would serve no purpose.

A brief summary of the evidence shows the following on the one issue of fact challenged by the two assignments: The same land is involved in this suit as was involved in the suit of Hill v. Lafoon, referred to in the trial court's finding. Connellee knew that Gen. Felix H. Robertson had some connection with the land involved in that suit. Gen. Robertson told Connellee that he had a power of attorney to sell the Washington Mitchell lands, and asked Connellee to find a purchaser. Connellee made the first sale to Browning. Gen. Robertson later came to Eastland, and the two made the second sale to Browning. However, Browning, in the meantime, had made a tentative arrangement with Robertson for the purchase of the second tract. Gen. Robertson made the two deeds to Browning. After the first deed was made to Browning and before the second Browning told Connellee that Robertson had no title on record and that he was dissatisfied with his title. Connellee thereupon conveyed to Browning 82 acres of his own land, paid back to Browning the money he was out and took a deed from Browning to the two tracts of land in controversy, and assumed to pay all the unpaid purchase-money notes on the two tracts. Connellee at once took up the matter of the condition of the record title with Gen. Robertson, told him of Browning's dissatisfaction with the title, that he found no title of record to Robertson, and by several letters from August, 1904, to December, 1908, insisted that Robertson would place his title to said lands of record. This Robertson promised to do, but did not do. Connellee continued to hold possession under the Browning title. Connellee was permitted to testify, over appellant's objection, and made the basis of the fourth assignment of error as follows:

"I never did assert or claim any right, title, or interest on any or all of this land by limitation as against the heirs, and I never did claim that land by limitation against anybody. I said that I never had claimed the land in controversy as against the heirs by limitation. I testified in Waco that I was holding a title of the heirs, and that they had superior title to that land by reason of the notes. I will state that during all of that time that I held that land I did not think that I had title to that land at all until there had been a release gotten from the true owners. That was never done, but was promised to be done. * * * I did not claim superior title because I did not have superior title to the land. I recognized the superior title to be in the oil owners, whoever they were."

[1] There was much evidence offered on the issue as to the claim Connellee made to the lands in controversy, and whether, during the prescriptive period he recognized an outstanding superior title to that under which he was holding. The evidence does not show that Connellee ever recognized a superior outstanding title to the lands in controversy in the heirs of Washington Mitchell other than by his verbal declarations made after the expiration of the 10-year prescriptive period. His letters to Robertson all show that his insistence there was that Robertson would secure and place of record the evidence of his title, but there is no suggestion in the letters or elsewhere in the record that he ever, at any time, disclaimed to be holding possession of the lands, paying taxes and exercising all acts of ownership, other than under the Browning deed, or that he ever repudiated the relation he sustained as vendee in the Browning deed, in which he assumed the outstanding unpaid purchase-money notes of Browning to Robertson, or that he ever notified Robertson of any disclaimer or repudiation, or that he recognized a superior, outstanding title in the heirs of Washington Mitchell other than the evidence of himself above quoted, and similar expressions used by him in other portions of his evidence.

[2] The rule is well settled that possession, under an executory contract, is adverse to all the world except the vendor, and so remains until the relation of vendor and vendee is disclaimed or repudiated by one of the parties with notice to the other; and where the purchaser enters into possession of land under an executory contract his possession from the time he enters is adverse and hostile to all the world except his vendor, or one who stands by privity of contract in a similar relation to him as such vendor. Barrett v. McKinney et al., 93 S. W. 240; Louisiana & T. L. Co. v. Southern Pine L. Co., 147 S. W. 604; Burnett v. Atterberry, 105 Tex. 119, 145 S. W. 582; Robertson v. Wood, 15 Tex. 5, 65 Am. Dec. 140.

In the last case referred to the court said that the purchaser in an executory contract for the sale of land is the trustee of his vendor, and that while he sustains this relation his possession is not adverse to his cestui que trust until he denies the right of the cestui que trust and assumes absolute ownership of the trust property adversely to and within the knowledge of the cestui que trust.

[3] The statute gives to the entry and possession of Browning and Connellee the effect of holding adversely to the world, and such legal effect cannot be impaired or destroyed by a mere mental reservation or intention, or declaration that such possession was not held against the heirs of Washington Mitchell, nor that they or either of them mentally recognized a superior title in said heirs. Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104. There must be notice to the vendor,

Robertson. Howard v. McKenzie, 54 Tex. 176; Hardy v. Wright, 168 S. W. 462. The evidence does not show that Connellee refused to pay the unpaid vendor's lien notes that he had assumed to pay until after the prescriptive period, and then the defense was not made on the ground of an outstanding title. We have concluded that in order to stop the running of the statute in favor of the title under which Connellee held, it would be necessary that Connellee, during the prescriptive period, should, at least, have openly and continuously manifested the purpose, if any he had, to disclaim against the' title under which he entered upon the land and held possession by some act manifesting an intention to repudiate the relation of vendor and vendee theretofore sustained.

An undisclosed mental reservation or purpose, however well defined, does not have that effect. In other words, the vendee cannot disclaim, or recognize a superior title, and at the same time hold that which he has received. The recorded warranty deed under which appellant held possession, showing unpaid purchase money, was a stronger assertion of title in the grantor than any undisclosed purpose the grantee could have against such title.

For reasons stated the case is reversed, and judgment here rendered in favor of appellant against all of the appellees.