## SMITH et al. v. ROBERTSON.*
### (No. 279—3516.)

(Commission of Appeals of Texas, Section A.
Dec. 14, 1921.)

**1. Adverse possession ⬧25—Possession under executory contract may ripen into title by limitation.**

Possession by a vendee under an executory contract may ripen into a title by limitation.

**2. Vendor and purchaser ⬧288—Purchaser at foreclosure of vendor's lien acquires vendor's title and vendee's limitation title if statute complied with.**

By the foreclosure of a vendor's lien retained in the original deed, the purchaser may acquire not only such title as the vendor had at the date of execution and delivery of that deed, but also the limitation title, if any, which had been created by the vendee's possession if the statute was complied with.

**3. Evidence ⬧273(2)—Acts and declaration of persons through whom purchaser claims title by limitation admissible to show their ownership.**

In trespass to try title to land purchased at foreclosure sale of vendor's lien, in which plaintiff claimed ownership through the original purchaser's adverse possession, evidence of acts and declarations of the original purchasers was admissible.

**4. Appeal and error ⬧1011(1)—Reversal of trial court's findings on conflicting evidence by appellate court error.**

In trespass to try title, where the trial court has made findings on conflicting evidence, reversal by the appellate court was error.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by J. B. Robertson against H. W. Smith and others. Judgment for defendants reversed, and judgment rendered for plaintiff by the Court of Civil Appeals (220 S. W. 620), and defendants bring error. Reversed, and judgment of district court affirmed.

J. R. Stubblefield, Earl Conner, and Sayles & Sayles, all of Eastland, for plaintiffs in error.

Felix H. Robertson, of Crawford, and J. D. Williamson, of Waco, for defendant in error.

RANDOLPH, J. J. B. Robertson, referred to herein as plaintiff, filed suit in the district court of Eastland county against H. W. Smith, C. U. Connellee, Jacob Lyerla, and certain other parties alleged to be the heirs of Washington Mitchell and their unknown heirs, to recover two tracts of land situated in Eastland county. On trial before the district court, a jury being waived, judgment was rendered that the plaintiff take nothing by his suit. The case was appealed to the honorable Court of Civil Appeals for the Second Supreme Judicial District, and was transferred by the Supreme Court to the honorable Court of Civil Appeals for the Eighth Supreme Judicial District, and that court reversed the case and rendered judgment in favor of plaintiff. 220 S. W. 620.

Felix H. Robertson, acting as attorney for certain parties named who are recited to be the heirs of Washington Mitchell, brought suit in trespass to try title against certain named defendants. In this suit the named plaintiffs recovered twenty-one thirty-seconds of the 589 acres of the Washington Mitchell survey, which land was partitioned among the plaintiffs in various proportions by the court. The judgment was rendered in 1895 at the June term of the district court of Eastland county.

It appears that thereafter Felix H. Robertson employed C. U. Connellee to help him sell the land thus recovered in this judgment, representing to Connellee that he had valid powers of attorney from all the people who owned this land, with the exception of two small interests, and that as to those interests he would secure conveyance from the probate court at Waco. Acting as agent for Robertson, Connellee sold a 101-acre tract of the land to Browning, delivering to Browning a deed from Felix H. Robertson, personally, and receiving from Browning the cash payment and certain vendor's lien notes. This deed was dated November 1, 1899. On December 1, 1903, Robertson and Connellee sold the 43-acre tract to Browning, Robertson making the deed. Browning becoming dissatisfied with the title, he having been advised that Robertson had no title, Connellee had him deed the land to him (Connellee), and compensated Browning by deeding him another 82-acre tract. The deed from Browning to Connellee is dated October 15, 1903. In this deed Connellee assumed the payment of the notes to Robertson, which Browning had executed in part payment for the land. These notes were transferred by Robertson to the Provident National Bank of Waco, and when the notes became due and remained unpaid the bank brought suit for judgment and to foreclose the lien. The land was sold under this judgment, and Felix H. Robertson, acting for his son, the plaintiff herein, bid it in for him, and plaintiff thereupon brought this suit to recover the land so purchased by him at this sale.

When Browning bought the land he went into possession of it, cultivating, using and enjoying it under his deed until he sold to Connellee. Connellee went into possession under his deed by tenants cultivating, using, and enjoying the land until after the trial of the case of the Provident National Bank at Waco in 1916, when he claims to have

---

⬧For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied February 1, 1922.

turned the place over to the tenant, H. W. Smith, for the "true owners." The plaintiff's title is based upon his claim of 5 and 10 years' limitation under and by virtue of the deeds to Browning and Connellee, their occupancy, possession, use, and payment of taxes. The plaintiff's claim of limitation is not contested except as to the one requirement of the statute below discussed.

The trial court, upon the issue of adverse claim, found as follows:

"The court further finds that C. U. Connellee has possession, and during his possession, paying taxes on said land, recognized a superior outstanding title in the heirs of Washington Mitchell, as described in judgment in suit No. 515, styled D. C. Hill v. Lofoon et al."

And further found:

"That during and including the years 1903 to 1908, the defendant C. U. Connellee, by different letters, and verbally also, urged and insisted that the said Felix H. Robertson secure two deeds of conveyance from the heirs (un)lawfully interested in the land, in order that chain of title might be straightened out, all of which said Felix H. Robertson failed to do."

[1-2] We understand the general rule to be that the vendee cannot dispute his vendor's title until he restores the possession; that a possession held by a vendee under an executory contract may, under certain circumstances, ripen into a title by limitation; and also that, by the foreclosure of the vendor's lien retained in the original deed, the purchaser may acquire not only such title as the vendor had at the date of the execution and delivery of that deed, but also the limitation title, if any, which had been created by the vendee's possession if all the requisites of the statute are complied with. But no such question is presented in the case at bar. The question before us is, Was Connellee's possession, held under the deed from Robertson to Browning and from Browning to Connellee, "adverse" to the owner, and was it continued under a claim of right hostile to and inconsistent with the claim of the owner?

From the evidence it appears that all the elements necessary to constitute a title by limitation are present in this case if the possession of Connellee was adverse to the owner, as contemplated by the statute quoted below, and that such possession inured to the benefit of the plaintiff, and became his possession under the sale in the matter of the foreclosure by the Provident National Bank.

Article 5681, Vernon's Texas Statutes, 1920, defines adverse possession as follows:

" 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

At the time that Felix H. Robertson executed his deeds to Browning he had no title, as appears from the evidence, and consequently Browning got none—neither did Connellee—by their deeds. As far as the owners were concerned, at the time of their several entries upon the land they were naked trespassers. For that reason the only title that plaintiff got by his purchase under the foreclosure proceeding was such title, if any, coming by reason of Connellee's possession of the land. We are not considering the questions in this case as affecting Connellee. Connellee in his original answer pleads not guilty and a general denial, and the judgment of the court is that plaintiff take nothing by his suit. Connellee having practically by his acts and conduct in this case disclaimed any claim of right or title to the land in controversy, he is not to be considered further as a participant in the litigation, but we shall consider the acts and declarations of Connellee and Felix H. Robertson as they explain the possession of Connellee, and as to whether or not they were adverse, as those questions apply to the other defendants in this suit—the heirs of Washington Mitchell. There is no question here of the vendee holding adversely to his vendor, but the question is simply this, What was the character of the possession of the vendee and vendor as against the owner?

[3] The declarations and acts of Connellee and Robertson before the expiration of the 10-year period of limitation claimed by plaintiff in this case are admissible upon the question as to whether or not the possession of Connellee was adverse to the owner. The fact that Connellee was the subvendee of Felix Robertson does not close his mouth so far as the facts in this case are concerned, he not being the beneficiary under the judgment, and not being in the attitude of claiming the title adverse to his vendor.

In the case of Texas Western Railway Co. v. Wilson, 83 Tex. 157, 18 S. W. 326, upon the inquiry whether the claim to and exercise of the right was adverse to the owner of the land, the court say:

"The testimony of John T. Brady, one of the directors, affords the only proof bearing immediately upon the point. That part of his evidence to which we refer is as follows: 'That John Koop (the owner of the land at the time) lived in Houston, but was away from the city, he thinks, when the road was built. We went on the land and have never paid for the right of way. We expected and intended to pay for it when called upon at any time by the owner.' There is no proof of any demand for possession or compensation, or a refusal thereof by the defendant, prior to the institution of this suit. We think that these facts do not show an intent to prescribe, or a use and enjoyment of the easement under a claim of right in the defendant, independent of and

antagonistic to the owner of the land. The inference may have been drawn by the court below that the inception and user of the right of way was in subordination to the owner, and in recognition of his superior rights in the premises, and if so we cannot hold, under well-settled rules of law, that the conclusion was unwarranted by the facts proved. 'A single lisp of acknowledgment * * *' of the owner's title is fatal to the right."

In the case of Mhoon v. Cain, 77 Tex. 318, 14 S. W. 24, the Supreme Court holds:

"The possession must be adverse to meet the terms of the statute. To be adverse it must amount to a disseisin of the owner. * * * The evidence of the party claiming limitation was that when he entered on the land he did not know who owned it, but after the entry he made inquiry for the owner that he might buy it, and agreed with Stone that they would buy it, together; that he and Stone made frequent inquiry for the owner that they might buy it, until it was sold for taxes and bid in by one Williams, June 3, 1879. He testified that soon after this he bought the land from Williams and then sold the north half to Stone. The witness Stone corroborates this statement, and adds that they employed a land agent to look up the owner. Such a possession would not be inconsistent with that of the owner; it does not indicate a claim hostile to the owner's title."

Further the court holds:

"Having once held in subordination and recognition of the real title, he could not make it a hostile holding, without a repudiation of the title evidenced by acts or declarations clearly manifesting that intention."

The two deeds were executed by Robertson to Browning on November 1, 1899, and December 1, 1903. His letter to Connellee, which was dated November 20, 1904, more than a year after he had executed the last deed to Browning, is as follows:

"I am working to straighten out that title, but people have moved about and it will take some time yet. Please bear with me patiently. Will Young have the money ready when deeds get to your bank?

"That is important, for when the deeds reach the bank if there is a slight delay the grantors kick violently. Can I promise cash on the Browning notes also?"

This letter was evidently written in answer to a letter of Connellee of date November 5, 1904, who had written Robertson that Browning quite a while before that had gone to an abstractor and found out that the title was not good; that, relying upon Robertson that he had a good title, he (Connellee) bought Browning out and stated that he was ready to take up all indebtedness "due you as soon as you show that you have bought out the interests of your clients." This state-

235 S.W.—54

ment was made after the delivery of the deed, as stated above. Robertson testifies that he had severed his connection and repudiated it with his clients when he delivered the deeds to Browning. This is a legitimate subject of inquiry, and is to be considered by the court and jury along with the other facts in the case. The fact that a witness testifies to what he has done as a conclusion does not prevent a court from investigating his conclusion.

We think that the trial court may well have taken this letter of Robertson's as a recognition of the outstanding title of the heirs of Washington Mitchell, and the letter of Robertson's, having been written long after the deeds had been delivered, was a very potent refutation of his claim that he had repudiated his connection with the owners and their title. If the lower court concluded from this evidence that he had so recognized the outstanding title of the owners, then the record is silent as to any repudiation by Robertson of their ownership thereafter. This letter of Robertson's was written after the entry on the land by Browning, but before the 10-year period had expired.

In the case of Bracken v. Jones, 63 Tex. 188, it is held that—

"Acts and declarations made by claimants of land after a possession for sufficient time to bar the owner is admissible to show that such possession was not adverse."

Certainly the acts and declarations of Connellee and Robertson prior to the termination of the 10-year period of limitation were admissible to show the character of that possession as to whether or not it was adverse to the owner, and it was proper for that question to go to the court or jury trying the case for their determination. Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Wickizer v. Williams (Civ. App.) 173 S. W. 288 (writ refused).

[4] The trial court having made its findings upon conflicting evidence, we are of the opinion that the action of the honorable Court of Civil Appeals in giving to the entry and possession of Browning and Connellee the effect of holding adverse to the world, and in setting aside the findings of fact of the trial court and reversing and rendering the judgment of that court, was error, and we recommend that their judgment be reversed, and the judgment of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.