## CRENSHAW et al. v. CHAMBERS.
### (No. 2650.)

(Court of Civil Appeals of Texas. Amarillo. April 7, 1926. Rehearing Denied May 12, 1926.)

**1. Appeal and error ⬰907(3).**

Appellate court presumes that the trial court had evidence before it to support its finding and authorize its judgment, where the evidence is not preserved by bill of exceptions or statement of facts.

**2. Parties ⬰25.**

In suit for profits which are held by bank in escrow, bank is proper party defendant.

**3. Abatement and revival ⬰9—Denying plea in abatement and refusing to dismiss on ground of misjoinder of escrow holder and pendency of another suit between same parties, except escrow holder, held not error, where escrow holder was proper defendant, and evidence supported judgment.**

Denial of plea in abatement and refusal to dismiss suit on ground of misjoinder of escrow holder as party defendant, and pendency of another suit between same parties, except the escrow holder, held not error, where escrow holder is proper party defendant, and the evidence supported the judgment.

**4. Venue ⬰45—Where suit by plaintiff against two defendants and escrow holder, and another suit by one of those defendants against plaintiff in that suit and other defendant, were removed to different districts for trial without objection, refusal to transfer first suit to district of second for purpose of consolidation held not error.**

Where suit was brought by contractor against two defendants and escrow holder, and another suit was brought by one of those defendants against plaintiff and other defendant in the same district, and each suit was transferred to another district without objection by A., held, refusal to transfer first suit to district wherein second was pending for purposes of consolidation was not error, where A. could have dismissed his suit, and no injury to him was shown.

**5. Action ⬰69—Where contractor brought suit against two defendants and escrow holder, and one defendant brought suit against the other and the contractor, refusal to postpone trial of first cause until trial of second held not error.**

Where suit was brought by contractor against two defendants, and escrow holder, and another suit was brought by one defendant against the other and the contractor in the same district, and each suit was transferred to another district without objection, refusal to postpone trial of first cause until trial of the second was not error, where plaintiff therein could have dismissed his suit, and no injury to him was shown.

**6. Trial ⬰350(4)—Submitting single issue as to whether plaintiff had contracted with two defendants held not error, as evidence did not justify submitting issue of separate contract with each.**

Submitting single issue as to whether plaintiff had contracted with two defendants held not error, as evidence did not justify submitting issue of separate contract with each.

**7. Contracts ⬰28(3)—Evidence held sufficient to sustain finding of contract between plaintiff and two defendants, where it was negotiated by third party seven or eight feet from defendants.**

Evidence held sufficient to sustain finding of contract between plaintiff and two defendants, where it was negotiated by third party seven or eight feet from the two defendants, though they denied hearing or assenting to proposition.

**8. Evidence ⬰589.**

Testimony of party to transaction is not binding on jury, where there are circumstances contradicting the testimony.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by J. W. Chambers against H. E. Crenshaw and another. Judgment for plaintiff, and defendants appeal. Affirmed.

W. B. Hamilton, of Dallas, G. R. Pate and Kilgore, Montgomery & Carrigan, all of Wichita Falls, and Phillips, Trammell & Chizum, of Fort Worth, for appellants.

Martin & Oneal, of Wichita Falls, for appellee.

RANDOLPH, J. J. W. Chambers instituted this suit against appellants Crenshaw and Loggie to recover one-fifth of the profits made by appellants on the purchase and sale of an oil-gas lease, and against the Security National Bank, of Wichita Falls, Tex., as es-

crow holder. On trial of the case judgment was rendered for the plaintiff against the defendant Loggie for $1,049.96, and against Crenshaw for $2,045.31, and that the bank pay said amounts to the plaintiff, together with interest thereon at the rate of 4 per cent. per annum from November 17, 1924, and for all costs of suit against defendants Crenshaw and Loggie.

Chambers alleged in his petition that in 1923 he was part owner of, and was engaged in drilling what is known as, Shipley well No. 1 in Archer county, and that when he struck the sand in that well the defendants Loggie and Crenshaw, together with others, approached him for information as to what the well showed, and stated to him that they wanted the information for their guidance in purchasing oil leases on the land near the well, and particularly in furnishing same as to their contemplated purchase of 40 acres, the N. E. ¼ of the N. W. ¼ of Houston & Texas Central Railway Company land, sec. 26, known as the Bobby Burns lease, Archer county, and agreed with him that, if he would give them the information and his opinion as a driller on the sand, they would give him one-fifth of the profits that they made on the leases that they might buy, and particularly on said 40-acre Bobby Burns lease, and that he accepted the offer, and gave them the information, and that they thereafter purchased the said Burns lease for $800. He further alleges a drilling contract made with parties on a part of the Burns lease, and also gas and oil production from said lease, and, later, a sale of the Burns lease to the Magnolia Petroleum Company by defendants for the sum of $100,000, and that his interest therein, being one-fifth in the profits made by Loggie and Crenshaw, was $4,500, and their refusal to pay him, and, further, that said $4,500 was then held by the defendant Security National Bank. The defendant bank answered, tendering into court the $4,500, with interest at the rate of 4 per cent. from November 17, 1924.

Defendants Crenshaw and Loggie filed pleas in abatement, general and special exceptions, and general denial.

The case was submitted on special issues to a jury, and the jury found: (1) That the defendants, before they purchased the oil lease from Burns, had an agreement with the plaintiff by the terms of which they were to give plaintiff an interest of one-fifth of such profits as they might make on such lease; (2) that it was not the understanding between plaintiff and defendants that the Shipley well No. 1 should be a paying well in order to entitle the plaintiff to an interest in the Burns 40-acre lease or the profits therefrom; (3) that the information furnished defendants had a pecuniary value. Upon such findings the trial court rendered his judgment.

[1-3] This suit was filed in the Seventy-Eighth judicial district court of Wichita county on November 17, 1924. Two days before the filing of this suit the defendant Crenshaw, as plaintiff, had filed in the same court a suit against Loggie and Chambers. This last-named suit filed by Crenshaw, No. 16315A, was transferred to the Thirtieth judicial district court of said county, and the case at bar, No. 16316B, was transferred to the Eighty-Ninth judicial district court of Wichita county. Appellants filed their pleas in abatement in this cause, seeking to have this cause abated, because, first, of misjoinder of parties defendant, and, second, because of the pendency of suit No. 16315B. This plea in abatement and answer were filed in this cause while it was pending in the Seventy-Eighth judicial district court, and before the transfer of this case to the Eighty-Ninth district court, but was acted on and overruled by the judge of the Eighty-Ninth judicial district after such transfer on December 5, 1924. The order entered shows that the overruling of defendants' pleas in abatement was duly excepted to. Such order recites that the court, having heard the evidence on said plea, is of the opinion that same should be overruled, and, therefore, overrules it. The evidence given on this hearing on the pleas in abatement is not preserved by bill of exception or statement of facts; hence we cannot determine what evidence the court acted on. In the absence of such showing, we must indulge the presumption that the trial court had evidence before it to support the finding and to authorize its judgment. Houston v. Washington, 16 Tex. Civ. App. 504, 41 S. W. 135. Further, the bank as escrow holder, or stakeholder, was a proper party defendant in the suit at bar. Woolley v. Canyon Exch. Co. (Tex. Civ. App.) 159 S. W. 403, 405 (writ denied). This being true, the trial court did not err in refusing to sustain the plea in abatement and in refusing to dismiss this case; the parties in this case not being the same as in the suit brought by Crenshaw.

[4, 5] The case at bar and the suit brought by Crenshaw, as plaintiff, were filed in the Seventy-Eighth judicial district court. Before the transfer of either case, there was no motion made by Crenshaw to consolidate the two cases, but, so far as the record discloses, no objection in any form was made to the transfer of the cases to the other district courts. In view of the apparent acquiescence in such transfer, and in view of the fact that Crenshaw, as plaintiff, had control of his case in the Thirtieth judicial district court, and could have dismissed it at his pleasure, and that no contractual or valuable right would have been lost to him, and no injury to him shown, we do not think the trial court erred in refusing to transfer the case at bar to the Thirtieth judicial district court that the defendant in this case, who is plaintiff in the case pending in said other court, might

have 'the opportunity to secure a consolidation of the two cases. For the same reasons it was not error 'for the trial court to refuse to postpone this cause until the trial of the suit brought by Crenshaw could be tried in the Thirtieth district court.

[6, 7] The appellants contend that the evidence fails to show any contract between Crenshaw and Chambers, and that it was error on the part of the trial court submitting such issue to the jury requiring a single finding as to whether Chambers, the plaintiff, had a contract with Loggie and Crenshaw, and that a peremptory instruction should have been given the jury under the facts of the case to return a verdict for Crenshaw, or, at least, the issue should have been submitted separately as to Crenshaw and Loggie.

The evidence adduced on the trial shows, if it shows anything, an agreement with Crenshaw and Loggie. There was no evidence to justify the submission of an issue as to a contract between Crenshaw and Chambers, separate and apart from Loggie. The evidence upon the issue as to whether or not an agreement was made between the plaintiff and Crenshaw and Loggie is substantially as follows: The plaintiff was engaged in drilling a well upon a lease belonging to one Shipley, in Archer county. By the terms of the drilling contract between Shipley and Chambers, the plaintiff was to have an interest in the lease and in the well thus drilled. During the drilling of the well, L. M. McCracken, who was engaged in the attempt to sell certain acreage near the well, known as the Bobby Burns lease, to the defendants Crenshaw and Loggie, together with Crenshaw and Loggie, made their appearance at the well. The purpose of their visit was to obtain information as to the character of the well then being drilled by Chambers as a guide to their future purchases of oil leases in that neighborhood. None of them at that time were acquainted with the plaintiff except McCracken, who had known him a short time. Plaintiff and the other employees at the well indicated to them that they were not welcome, and shut down operations, and, as it was near the noon hour, all of them, except the plaintiff, left and went to the cook shack for their lunch. McCracken, Crenshaw, and Loggie got in the car and left, going by the cook shack, near which they stopped the car. McCracken called Chambers out and had a conversation with him. The plaintiff's version of this conversation and how it came about is as follows:

"I know Mr. L. M. McCracken. I know Mr. Widener, Mr. Loggie, and Mr. Crenshaw. I took a core from the Shipley well that I have described when I drilled it, on or about the 15th of March, or about that time, 1923. Before I took the core out of the well, I saw Mr. Crenshaw and Mr. Loggie and Mr. McCracken. They came to my well the morning that we took the core out. I wasn't introduced to Mr. Loggie and Mr. Crenshaw. They made them-

selves known to me. Mr. Loggie there he just came right up on the floor, and says, 'Hello, John, you are taking a core, are you?' and it shocked me. I never had seen the man before. He just made himself acquainted. I went on and talked to him just the same. Mr. Crenshaw he came around and also McCracken—all came in on the floor and got around the fire, what fire we had. I don't believe McCracken made any statement as to who Crenshaw was or anything about it at all there on the derrick after they came in there. Just walked right up and made themselves at home. I did not invite Mr. Crenshaw and Mr. Loggie in there to see what was going on there in taking out the core. That was a cold day. That morning it was very cold. I had a fire there on the derrick floor. I was standing watching the driller making this core and advising him. The driller was a fellow by the name of Language. McCracken he got out and cut some wood and brought in and built up a good fire, and in the meantime Mr. Crenshaw, he went out to the boiler. They kind of crowded him out. To get the core out of the well, you let wait on there and stop there—When we thought we had plenty of core, I told the driller to close the core barrel, and he went to spudding it with a rotary. It looked like the sand was so soft every time he rotated or spudded it he would make two or three inches more than I really, wanted to. I did not want him to go any further, so I taken it and hit it a couple of hard licks. Loggie was there and says, 'I bet you a dollar you got it.' He says, 'John, I bet you a dollar you got it.' That was the way it was. I had not told him anything. He was an experienced man like myself. An experienced man could go on the floor and look at it and tell without doing it. I had the boys go ahead and pull it out all the way up except the last ribble that had a core barrel on it. I looked at my watch, and saw it was about 20 minutes to 12. I turned to Mr. Gould, one of the interested parties. I said, 'Mr. Gould, these parties are all strangers to me, I feel like they are imposing on us.' He said, 'Yes, it looks that way. We will just shut down and go to dinner.' I said, 'All right, boys, all of you go to dinner.' The boys all went to dinner, and I stayed there, and after they all got away I turned around to Mr. Loggie and the bunch that was there—Mr. Loggie, Mr. McCracken, and Mr. Crenshaw. I said to them, 'Now these people kind of feel like they are imposing on them a little bit, and also do I too.' I says, 'We are not going to pull this core until you all leave.' They didn't say a word back to me whatever. They just turned and said, 'Well, guess we had better go.' I walked on about 10 feet across to the engine behind them. They walked on out, and I hesitated until they got in their car. They drove on around and drove slowly. I went back to the cook shack where the lunch was. When I went to the cook shack I wasn't looking for Mr. Crenshaw, Loggie, and McCracken to stop. I went up around the shack, and was going to rinse my hands, the wash pan was there, and they drove up. I don't, suppose they moved much further than that door from the corner of the shack, and McCracken he gets out of the car, and steps away from the car, kinda near toward me, and called me. Of course, I walked toward him. It couldn't have been over seven or eight feet, when McCracken met me from the car, if that

far, because the little old path that run up there, they had to drive in there on this side of that brush. Mr. Loggie and Mr. Crenshaw were in the car while McCracken was talking to me. Well, McCracken come out and come to me and called me and I met him and he says to me— We talked in an ordinary tone of voice. There was no secret about it. Mr. Loggie and Mr. Crenshaw looked at me with a pleasant smile, and Mr. Crenshaw there kinda turned around, kind of sat in the car with his face toward me, and looked very pleasant with a pleasant smile. McCracken says to me, he said, 'Chambers, if you get a good core out of that well and it looks good, and you will bring that up to the Kemp Hotel tonight. These boys here, Mr. Loggie and Mr. Crenshaw, will buy some acreage here, and they will cut you in as one-fifth of the profit.' Well, that sounded good to me, and that got my interest, and I promised him that I would. I says, 'Now one thing, do you believe that Mr. Loggie and this man here? They both are strangers to me,' I says, 'You are too, as far as that is concerned.' I says, 'I been knowing you since I started this well,' I says, 'you think they will shoot fair with me?' He says, 'They will.' He says, 'I have been knowing them a long time.' When he got through with the conversation he got in the car and they drove off. They high-balled me."

Plaintiff then testifies as to the taking of the core to Kemp's Hotel at Wichita Falls, and that he showed the core to certain parties on the mezzanine floor of the hotel, and secured from Loggie again the promise to take care of him.

[8] It is true that Loggie and Crenshaw deny making the agreement or contract testified to by plaintiff, and deny hearing McCracken's talk with him. Their testimony directly contradicting the evidence of plaintiff was weighed by the jury and trial court, and found wanting. We are not authorized to say that their finding was not correct. That the proposition was made by McCracken is amply supported by the evidence. Plaintiff testified to the proposition, and McCracken did not testify. The circumstance that the plaintiff went to Wichita Falls with the core taken from the well and met the parties at the Kemp Hotel and exhibited the core to them can be explained on no other hypothesis. The jury, having considered the direct and circumstantial evidence, had the right to conclude that the contract was made as testified to by the plaintiff, and that Crenshaw and Loggie, sitting in the car within seven or eight feet of McCracken and the plaintiff, not only could, but did, hear the conversation between McCracken and the plaintiff in which the proposition was made and accepted. It is evident that the parties went to the well to get the information they did get; that, even though Crenshaw was not in the meeting that night in the Kemp Hotel, when plaintiff exhibited the core, yet he did get the information furnished by plaintiff by an inspection of the core the next morning, and on that day the defendants closed the deal for the Bobby Burns lease.

The fact that Crenshaw and Loggie denied the making of the agreement, or that they heard and assented to the proposition made by McCracken, does not conclude the matter, but, if the jury chose to disregard their evidence, and believed from the surrounding facts and circumstances shown in evidence that they did make the agreement, they were warranted in so doing. Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex. Civ. App.) 235 S. W. 850, 852; Smith v. Robertson (Tex. Com. App.) 235 S. W. 847, 849; Wortman v. Young (Tex. Com. App.) 235 S. W. 559, 562.

The testimony of a party to a transaction is not binding on the jury, where there are circumstances contradicting such testimony. Groves v. Wittenberg (Tex. Civ. App.) 165 S. W. 889, 891.

Having carefully investigated the matters set out under each assignment of error and proposition urged by appellants, we have found no reversible error, and, therefore, affirm the judgment of the trial court.