## DIAL et al. v. MARTIN et al.
### No. 3492.

Court of Civil Appeals of Texas. Amarillo. Jan. 21, 1931.

Rehearing Denied March 4, 1931. On Second Motions for Rehearing March 25, 1931. On Appellees' Second Supplemental Motion for Rehearing April 1, 1931.

Lloyd Fletcher, of Amarillo, and H. D. Bishop, of Austin, for appellants.

John E. Green, Jr., and David Proctor, both of Houston, Burney Braly and G. R. Pate, both of Fort Worth, Hamilton & Ham-

ilton, of Dallas, J. T. Montgomery and R. C. Stanford, both of Wichita Falls, and Don Emery and Morgan, Morgan & Britain, all of Amarillo, for appellees.

HALL, C. J.

This suit was originally filed in the district court of Hutchinson county, but by agreement was finally transferred to, and tried in, the district court of Potter county. At a former trial, the district court sustained the defendants' general demurrer to the plaintiffs' petition. Plaintiffs appealed, and this court, finding that there was a fatal defect of parties defendant, reversed the judgment and remanded the cause to permit plaintiffs to make necessary parties. 8 S.W.(2d) 241.

Thereafter, Lloyd Fletcher, as guardian ad litem of Elizabeth Dial and David Dial, minors, filed a third amended original petition, making numerous additional parties. Prior to the trial, several of these defendants filed disclaimers, and were dismissed from the action, and the trial proceeded with Lloyd Fletcher, guardian ad litem for Elizabeth and David Dial, minors, and Gertrude A. Dial, in her individual right and executrix of the estate of her deceased husband and guardian of said minors, as plaintiffs. After both sides closed in the introduction of the testimony, the trial judge directed the jury to return a verdict against plaintiffs in favor of N. H. Martin, J. J. Perkins, George E. Martin, W. B. Hamilton of Wichita county, W. B. Hamilton of Dallas county, G. R. Pate, Continental Oil Company, Gulf Production Company, W. D. Cline, Panhandle Refining Company, Phillips Petroleum Company, Goldelline Oil Corporation, Buttram Petroleum Company, and Errett R. Newby. From a judgment entered in accordance with the verdict, this appeal is prosecuted.

It appears that in 1914 J. C. Dial and his brother C. L. Dial entered into a partnership for the purpose of dealing in and raising cattle. This partnership acquired the lands involved in this controversy, on which C. L. Dial, as manager, was conducting the partnership business and was in charge of and managing the partnership property which, in addition to said land, consisted of about 300 cattle. It is conceded that on April 8, 1918, when J. C. Dial died, the lands in controversy were a part of the assets of the partnership; that said lands were incumbered to the extent of about $50,000, which represented part of the purchase price. At the time of J. C. Dial's death, the partnership owned 2,250 head of cattle, which were being grazed on the lands in controversy and certain other lands which the partnership had leased for grazing purposes. The partnership owed other debts amounting to about $100,000 secured by chattel mortgages on the cattle. J. C. Dial was an attorney, and took no active part in the management of the ranch. He was survived by his widow, Gertrude A. Dial, and the two minor children above mentioned, plaintiffs herein. He left a will, which will be hereinafter discussed, and which was probated on May 11, 1918, and his surviving wife, Gertrude A. Dial, appointed executrix. Four days thereafter the probate court entered an order appointing W. H. Dial, the father of J. C. Dial, deceased, as joint executor with Gertrude A. Dial. In December, 1918, C. L. Dial, the surviving member of the partnership, joined by his father, W. H. Dial, as executor, and Gertrude A. Dial, as executrix of the estate of J. C. Dial, deceased, executed and delivered to T. E. Durham an oil and gas lease conveying the mineral estate of the lands in controversy. On March 11, 1922, C. L. Dial, the surviving partner, sold the lands in controversy to N. H. Martin and J. J. Perkins, and was joined in the conveyance by his wife and by Gertrude A. Dial, who executed the conveyance for herself individually and as executrix. The deed was also executed by W. H. Dial as executor.

On March 26, 1926, Gertrude A. Dial, individually and as executrix, as well as guardian of the minor plaintiffs herein, and as next friend of said minors, filed suit numbered 639 upon the docket of the district court of Hutchinson county and entitled Gertrude A. Dial et al. v. N. H. Martin et al. In that suit Mrs. Gertrude A. Dial sought to recover of the defendants the lands involved in this controversy and to set aside and annul the oil and gas lease and the deed above referred to. After that suit was filed, and prior to the 16th of June, 1926, negotiations for the compromise and settlement of the controversy were opened, and on said date Mrs. Dial, as guardian of the minor plaintiffs, made a report to the probate court of Roberts county, where the guardianship proceedings were pending, stating that she had an opportunity to settle the litigation for $212,500, one-half of which would be paid to the minor plaintiffs, and praying for authority to make said compromise. The court heard the application, and on the same day entered an order authorizing the guardian to consummate the settlement in accordance with the terms stated in the application. She then compromised the said suit numbered 639 and, in addition to the money paid, she obtained an oil and gas lease, fully paid up for ten years, upon twenty acres of the land involved herein one-half of said lease being vested in her and the other half in her minor children. On the 19th of June, 1926, an agreed judgment was entered in the district court of Hutchinson county in said cause numbered 639, which confirmed and approved the settlement and adjudicated the issues in accordance with the terms of the compromise agreement. According to the terms of this judgment, the defendants were

directed to pay to Gertrude A. Dial $106,250, and to deliver to the bank designated therein as depository the sum of $106,250 for the benefit of the minors Elizabeth and David Dial, and also to deliver the oil and gas lease above referred to. The terms of this judgment were complied with by the appellees herein. On June 19, 1926, Mrs. Dial, as guardian of the minor plaintiffs herein, reported to the probate court of Roberts county that the agreed settlement had been consummated in accordance with the orders of the court, and prayed for a confirmation and approval of her action. The court entered an order of that date which recites that evidence was heard as to the fairness and reasonableness of the settlement, and ordering that said settlement be confirmed.

Later, about December 16, 1926, Mrs. Gertrude A. Dial, as executrix of the estate of J. C. Dial, deceased, and as guardian and next friend of her minor children, Elizabeth and David Dial, filed this suit against N. H. Martin and the other defendants in the original suit and their assignees to recover the lands in controversy. In this action, the minor plaintiffs, represented by their guardian ad litem, seek cancellation of the oil lease and the deed hereinbefore referred to, in so far as it affects their interest in the property involved. They attack the agreed judgment entered in cause No. 639, and pray that it be vacated and annulled, and that they recover title and possession of all of their estate inherited from their father, which they allege to be one-fourth undivided interest in the lands constituting the ranch belonging to the partnership, of which their deceased father was a member.

Since the effect of the agreed judgment is to confirm and validate both the oil and gas lease and the deed, the first question to be considered is whether the appellants, under the record, were entitled to have said judgment vacated. This issue is presented by several propositions and counter-propositions discussed in the briefs of the respective parties.

As preliminary to the determination of that question, it is proper for us to construe the will of J. C. Dial in order to ascertain the nature of the estate taken by Mrs. Gertrude A. Dial and her children under it and the limitation, if any, on the devise to her. And, because the validity of the judgment depends also upon the authority of Mrs. Dial as executrix and guardian, it is necessary to take into consideration the orders and proceedings in the probate court as they relate to her power and authority to bind the children by an agreed judgment.

Omitting the formal and immaterial clauses, the will of J. C. Dial provided, as follows:

"Second. I desire and direct that all of my just debts be paid upon proof of the existence of the same, without delay, and that such proof shall be made of the existence and justness of said debts by the sworn statements of those holding the same and that they be paid by my executrix hereinafter mentioned.

"Third. It is my will and desire and I so direct that all the property of which I may die seized and possessed of, both real and personal, pass to my beloved wife Gertrude A. Dial, after the payment of all just debts and the expenses incident to the probation of this will, subject, however, to the following conditions:

"(a) That the same shall be held by her for the support and maintenance of my children and the support and maintenance of my wife during widowhood.

"(b) That at the end of her widowhood, that all of such property, both real and personal, pass to and be vested in fee simple, share and share alike, to my children who may be living at such time, or their issues, if any there be.

"Fourth. I hereby appoint and constitute my beloved wife, Mrs. Gertrude A. Dial, the sole executrix of this my last will and testament during her widowhood and that during such widowhood no bond or other security be required of her as such executrix, but upon the termination of such widowhood, I direct that my brother C. L. Dial be appointed executor of said estate, both real and personal, and that no bond be required of him as such, it being the intention of this will and of the testator herein that the wife of the testator have full control and management of all of the testator's estate, both real and personal, for the use and benefit of herself and the children of herself and the testator, during her widowhood, but that at the end of said widowhood, that all of said property, both real and personal, pass and be vested in the testator's children and that the control and management of the same be divested from the said wife of the testator at the end of such widowhood and be placed beyond her control and management in the brother named herein of the testator, if he be living, and if not living, then in the nearest of male kin to said testator; that at the end of said widowhood the executrix named herein be required to render an account, stating the amount of property on hand at the time, both real and personal, and that the same be filed as a part of the record in the probation of this will and that upon the devisees herein becoming of age, that the executrix or executor as the case may be, likewise file a statement showing the amount of property both real and personal on hand at such time but that no bond be required of either party; the testator herein relying upon the honesty and integrity of the parties herein named.

"Fifth. It is my desire that no other action, and I so direct, shall be had in the Coun-

ty Court in the administration of my estate than to approve and record this will and to return an inventory and appraisement of my estate and list of claims.

"Sixth. I also direct and desire that such insurance policies that are payable to my children be paid over by the insurance companies direct to the executrix herein named immediately upon proof of death and that such executrix hold the same for the use and benefit of the beneficiary or beneficiaries named in such policy, using the same for the support, maintenance and education, according to their station in life, of such beneficiary or beneficiaries therein named, that the insurance company require no bond for the delivery of such money. Should, however, at the end of the executrix widowhood, she should elect to keep the children of the testator herein, then it is directed by this will and testament that she be required to support and maintain said children at her own proper expense, excepting that after said children have passed through the high school, that the moneys herein devised shall be used for their education in some approved educational institution in the event she of her own means may not be able to do so."

 There is nothing in the will which indicates that the testator intended to dispose of any property other than his interest in the community property. There is no description of any specific property other than the insurance policies, which, it appears, were made payable to the children. The rule is that a will should not be given construction so as to hold that the testator intended to dispose of property not owned by him, unless the language of the will is fairly susceptible of no other construction. Sailer v. Furche et al. (Tex. Com. App.) 22 S.W.(2d) 1065, and authorities therein cited. Our construction of the will, construed as a whole, is that it creates a life estate in Mrs. Gertrude A. Dial in the testator's interest in the community property, except as to the proceeds of the insurance policies, but that this life estate is subject to divestiture upon her second marriage. Haring v. Shelton (Tex. Civ. App.) 114 S. W. 389, Id., 103 Tex. 10, 122 S. W. 13; Thompson on Construction of Wills, §§ 369, 434. Since she held only a life estate determinable upon her second marriage, her power and authority under the will to dispose of or in any way affect the interest of her children, who are remaindermen under the will, is limited by the rules relating to the authority of life tenants under wills creating contingent remainders. It will be noted further that she is given no power of disposition in so far as the corpus of the children's interest in the estate is affected. Subdivision (a) of the third clause says that the property shall be held by her for the support and maintenance of herself and the children,

and in the fourth clause we find this recitation:

"It being the intention of this will and of the testator herein that the wife of the testator have full control and management of all of the testator's estate, both real and personal, for the use and benefit of herself and the children of herself and the testator, during her widowhood."

Immediately following this expression, the testator declares that, at the end of her widowhood, all of the property shall pass and be vested in the children, who are thus designated as remaindermen, and further provides that the control and management of the wife immediately cease when she shall marry again.

 The appellees contend that, under the provisions of the will, Mrs. Dial is an independent executrix. We cannot assent to this proposition. The fifth clause, quoted above, under R. S. art. 3436, if considered alone, would have the effect of making Mrs. Dial independent executrix, but the will imposes upon her the duty of requiring verified accounts against his estate before she is authorized to pay them, and further provides that, should she marry again, she shall render an account stating the amount of the property on hand at the time, both real and personal, and directs that the account be filed as a part of the record in the probate court. The will further provides that such account shall be filed by her when the children become of age. The effect of these provisions is to require the supervision of the probate court and to deprive her of that degree of absolute control and discretion peculiar to an independent executrix. Hughes v. Mulanax, 105 Tex. 576, 153 S. W. 299, 303; McMahan v. McMahan (Tex. Civ. App.) 175 S. W. 157; Bain v. Coats (Tex. Com. App.) 244 S. W. 130; Parker v. Allison (Tex. Civ. App.) 22 S.W.(2d) 338.

In the Hughes v. Mulanax Case, supra, the Supreme Court said:

"If we were to hold, in effect, that a testator, without observing substantially the restrictions which are imposed upon him by said article 1995 [3496] may, according to his own desires or caprices, practically prescribe in his will the extent of the jurisdiction and control which the probate court may exercise over his estate, such holding would, in many instances, we fear, tend to derange our probate system, to create confusion as to rights and remedies of persons interested in such estate, and to render and leave uncertain both jurisdiction and procedure in the courts."

In the McMahan Case, supra, it appears that the executors were to take charge of the property and hold it together and maintain the testator's minor children, and this

provision, it was held, prevented the construction of the will so as to declare the executors to be independent. It will be observed that the will under consideration requires Mrs. Dial to hold the corpus of the estate and out of the proceeds thereof to maintain the children, as well as herself. Such wills are usually designated "non-intervention wills," and the statutes which permit the execution of wills of this character contemplate that there shall be no supervision and that no necessity shall arise for supervision by the probate court.

R. S. art. 3295, requires the clerk to enter upon the judge's probate docket a minute of all orders, judgments, decrees, and proceedings had in the estate, with the date thereof, and each paper filed in an estate must be numbered with the proper docket number. Article 3296 requires county clerks to keep a docket styled probate minutes and to enter therein in full all the orders, judgments, decrees, and proceedings of the court, and record therein all papers of estates required by law to be recorded. One of the papers to be recorded in the probate minutes is, according to article 3301 (7), all exhibits and accounts, and another is all reports of hiring, renting, or sale. These requirements, under the decisions cited, impose upon the probate court duties not contemplated by article 3436, or at least they create a doubt as to the intention of the testator and such a conflict which, according to the case of Hughes v. Mulanax, supra, must be resolved in favor of the jurisdiction of the probate court. We therefore conclude that Mrs. Dial, under the will, is not an independent executrix.

On the 12th day of December, 1918, an oil and gas lease, conveying the mineral estate of the lands involved to Thomas Durham, was executed, which recites: "This agreement made and entered into the 30th day of November, 1918, by and between Dial Brothers, a firm composed of C. L. Dial and J. C. Dial, by C. L. Dial, W. H. Dial, Executor, and Gertrude A. Dial, Executrix for the estate of J. C. Dial, deceased, of Hutchinson County, Texas." This instrument purports to convey to Durham, as lessee, the oil and gas in and under the real estate therein described, with authority in Durham to assign in whole or in part such interest, and which contains a general warranty of title, the grantors therein signing as follows: "C. L. Dial," "W. H. Dial, Executor of the Estate of J. C. Dial, deceased," "Gertrude A. Dial, Executrix of the Estate of J. C. Dial, Deceased." It will be noted that Mrs. Gertrude A. Dial does not by this instrument dispose of her individual interest, and that the instrument purports, through C. L. Dial as surviving partner, to dispose of all of the partnership interest in the mineral estate.

In our opinion, the fact that W. H. Dial, the father of C. L. and J. C. Dial, has executed this lease, and also the deed hereinafter mentioned, is of no consequence. He was not named as executor in the will of J. C. Dial, but the record shows that he was appointed three or four days after the appointment of Mrs. Gertrude A. Dial, upon representations made to the probate judge that J. C. Dial, before his death, had said that he wanted his father to act as executor with his wife. This, of course, is not a sufficient basis for the appointment of W. H. Dial as executor, and his acts in such capacity are void, and in no event do they affect the right of the minor plaintiffs herein.

On the 11th day of March, 1922, C. L. Dial, joined by his wife, Lelia Dial, and Mrs. Gertrude A. Dial, "for herself and as independent executrix of the estate of J. C. Dial, deceased," executed a general warranty deed, in which W. H. Dial, "executor of the estate of J. C. Dial,-deceased," also joined as grantor, conveying the lands herein involved for a recited consideration of $96,000, "paid and to be paid as hereinafter specified and for the further consideration of the payment of certain community debts against the estate of J. C. Dial deceased and wife," to the grantees therein named, N. H. Martin and J. J. Perkins. Certain notes aggregating approximately $96,000 are described in the deed, which the instrument recites were to be assumed and paid by the grantees. Some of these notes were executed by C. L. Dial and Gertrude A. Dial long after the death of J. C. Dial. A surviving partner cannot sell partnership assets for the purpose of paying the individual or community debts of the deceased partner, at least until all of the firm's debts have been paid. 2 Rowley on Part. § 631. Nor can he sell to pay debts illegally incurred after the dissolution. Cock v. Carson, 45 Tex. 429.

Since Mrs. Gertrude A. Dial was not appointed independent executrix, and because no orders of the probate court were ever obtained, authorizing her as executrix under the general laws to sell the lands conveyed, the deed is inoperative and void as a conveyance of her children's interest inherited from their father, J. C. Dial, deceased. R. S. art. 3553, is: "No sale of any property of an estate shall be made by an executor or administrator without an order of the court authorizing the same." Matula v. Freytag, 101 Tex. 357, 107 S. W. 536; Ferguson v. Mounts (Tex. Civ. App.) 281 S. W. 616; Ball v. Collins (Tex. Sup.) 5 S. W. 622; Moore v. Wooten (Tex. Com. App.) 280 S. W. 742. The instrument may be held effective as a transfer of her individual interest, in the absence of fraud, but in no degree does it affect the existing interest of her minor children.

On June 19, 1926, the consent judgment hereinabove referred to was rendered in the district court of Hutchinson county in cause No. 639, entitled Gertrude A. Dial et al. v. N. H. Martin et al. This judgment recites, in part: "This day court is in session by consent of all the parties," and that Gertrude A. Dial, individually and as executrix of the estate of J. C. Dial, deceased, and as guardian and next friend of the minor plaintiffs, Elizabeth Dial and David Dial, appeared, and "also came the said minor plaintiffs Elizabeth Dial and David Dial. Also came the said minors Elizabeth Dial and David Dial by and through their next friend and guardian, Gertrude A. Dial, in person and by their attorneys, and announced ready for trial." The appearance of the numerous defendants is also noted in the judgment. The judgment further recites that the parties announced to the court that a settlement had been agreed upon. subject to the approval of the court. whereby the defendants agreed to pay plaintiffs $212,500 in cash, and to deliver to plaintiffs a five-year paid-up oil and gas lease of twenty acres out of the lands involved herein, and that by the terms of the agreement defendants were to have judgment for the lands described in the plaintiffs' petition, including the mineral rights, and that the cloud on their title be removed, that the plaintiffs would take nothing except the twenty-acre lease and the cash payment, and that the deed and lease theretofore executed should be adjudged as valid and in all things confirmed. The judgment recites that the court heard evidence as to the fairness and reasonableness of the compromise. and that, it appearing that it was to the best interest of the minor plaintiffs that the settlement should be consummated, and it further appearing that Mrs. Gertrude A. Dial has a one-half interest in the asserted cause of action therein, and that the said minors have a one-half interest jointly, each being entitled to a one-fourth interest, the judgment decrees that $106,250 be deposited in the bank designated therein for the benefit of the two minor children; that the remaining $106,250 be paid to Mrs. Gertrude A. Dial as her individual property; and that the paid-up oil and gas lease of twenty acres be owned jointly by Mrs. Dial and her minor children.

The judgment further decrees the validity of the lease and the deed as against all parties, including the minor plaintiffs, and quiets the defendants' title to the lands involved. A conveyance which is void for want of capacity in the grantor to make it cannot be confirmed. "Confirmation may make good a voidable or defeasible estate, but cannot operate upon or aid an estate which is void in law, but only 'confirms its infirmity.'" Branham v. Mayor, etc., of San Jose, 24 Cal. 605. Mrs. Gertrude Dial testified that the court heard no evidence before rendering the judgment. The conflict between the recital in the judgment and Mrs. Dial's testimony that no evidence was heard, is upon a material issue. The courts hold that, when a minor is a party to a suit, he is in a sense a ward of the court. The court is required to appoint a competent and reliable attorney to represent the minor, and in entering a consent judgment the court should require sufficient and satisfactory proof before entering a judgment against one who is not sui juris. The fact that the opposing parties make admissions or confessions in favor of the minor is not sufficient. The rules which govern in such matters are aptly stated as follows:

31 C. J. 1115, § 254: "It is the right and duty of the court to protect the interests of an infant party to litigation, on its own motion, whether he be a plaintiff or defendant, whether the proper relief is asked in the pleadings or not and whether the claim or defense be properly pleaded or not. In order to protect fully the infant's interest, the court should exercise a general supervision over the conduct of the next friend or guardian ad litem, and advise such representative as to what steps to take or what pleadings to file, so that the infant's rights are in no way sacrificed or prejudiced or abandoned, and all proper defenses made for him before judgment is rendered against him."

31 C. J. 1119, § 263: "Although an infant is capable of suing or being sued, his incapacity requires that he be protected, and to that end it is generally necessary that an infant litigant should be properly represented by some one who may adequately enforce and protect his rights, throughout the whole litigation, although there are adults joined as litigants with the infant."

31 C. J. 1163, § 345: "Ordinarily no presumption against an infant can be permitted, but, on the contrary, every presumption is indulged in his favor. Hence, in actions against infants all the facts entitling plaintiff to judgment must be sustained by proof, and the necessity of establishing the case as against an infant party cannot be obviated by making him a plaintiff."

It appears that Mrs. Dial and her children brought the action in which the consent judgment was entered in trespass to try title to recover their interest as heirs and devisees under the will of J. C. Dial in the land involved and to cancel the lease and deed under general allegations that such instruments were obtained through fraud and misrepresentations. It does not appear that a guardian ad litem had been appointed to represent the children in the suit. While the general rule is that a guardian is authorized to represent the ward in litigation, and that a judgment entered for or against the ward in an action where the guardian as such is

a party is valid, the rule does not apply where the guardian has an interest which is adverse to that of the ward. Stillwell v. Standard Sav. & L. Ass'n (Tex. Civ. App.) 30 S.W.(2d) 690; R. S. art. 2159.

The appellants attack the guardianship proceedings as being insufficient to authorize Mrs. Gertrude Dial to act as guardian and to represent the children in cause No. 639. It is unnecessary to discuss this matter in detail. The orders of a probate court made within the scope of its powers are presumptively valid, and cannot be collaterally attacked, unless the record affirmatively shows unauthorized exercise of jurisdiction in the particular case. Sloan v. Woods (Tex. Com. App.) 25 S.W.(2d) 309.

The appellants attack this judgment upon the ground that Mrs. Gertrude A. Dial was not authorized to enter into the agreed judgment because her interest conflicted with that of the minors and because no guardian ad litem was appointed. We think this contention must be sustained. By the mineral lease she had not conveyed her interest in the mineral estate, but by the deed for the considerations recited therein, that is, the assumption and payment of certain notes which she had executed, she had divested herself of all interest in the lands, including her life estate under the will, and yet by her pleadings she insists upon recovering an interest as against all parties, including her children—and did recover one-half. Unless she was induced to execute the deed through fraud, she was not entitled to any part of the $212,500 nor any interest in the twenty-acre lease which was disposed of by the judgment. The issue of fraud was not expressly adjudicated, and, unless she had executed these instruments as a result of fraudulent representations on the part of the defendants, she had been paid $106,250, which the court could have decreed only to the children, together with the entire lease of twenty acres of land, even if the minors had been parties to the suit.

A consent judgment is in the nature of a contract, and will bind only those parties capable of contracting or who are represented by some one legally authorized to contract for them. Freeman on Judgments, pp. 1399, 2774. In attempting to dispose of the children's interest in the land, she exceeded the powers given her by the will of her husband. By its terms she was to manage and control the children's interest for the support and maintenance of herself and the children during her life or until her marriage. She was not authorized to sell as executrix under the will. She was not independent executrix, and as life tenant only she could not sell the interest of the remaindermen. Power to manage and control does not authorize the executor to sell and convey. Blanton v. Mayes, 58

Tex. 422; Id., 67 Tex. 345, 3 S. W. 40. It follows that any effort by her to dispose of the children's interest in the land through a consent judgment is as ineffective as an attempt to convey it by any other form of contract. Whether she could sell as executrix under orders of the probate court is a matter not before us, since it is not shown that any condition has existed requiring her to make application for such sale or that any application as executrix had ever been made.

So the right to this money and the lease was an issue in the case between Mrs. Dial and her children, injected into it by her pleadings, and in regard to which their interest directly conflicted, and a consent judgment which gave her any amount is void, unless the children were properly represented by a guardian ad litem. This was not done. Sandoval v. Rosser, 86 Tex. 682, 26 S. W. 933; Fortune v. Killebrew, 86 Tex. 172, 23 S. W. 976; Williams v. Patterson (Tex. Com. App.) 288 S. W. 132; Brown v. Brown (Tex. Civ. App.) 230 S. W. 1058, 1059; Kromer v. Friday, 10 Wash. 621, 39 P. 329, 32 L. R. A. 671; Messner v. Giddings, 65 Tex. 301; 31 C. J. pp. 1115, 1119, 1163; Pearce v. Heyman (Tex. Civ. App.) 158 S. W. 242.

It is not enough for the appellees to say that the children's right of action is against their mother for the recovery of the money and properties she received under the judgment. In entering into the consent judgment, the appellees acted at their peril. They knew they were acquiring property in which the children had an interest, and, if through the instrumentality of the judgment they have acquired that property from some one who was not authorized to convey it, they are responsible primarily to the children for its value.

We think the judgment is void upon the further ground that it was brought to cancel the lease and the deed which had been executed by C. L. Dial and his wife, and they had not been made parties to the suit. This case was reversed before because all of the parties to the two instruments and the judgment now under consideration had not been made parties to the action. We held that an action to cancel a written instrument required that all of the parties to the instrument should be made parties to the suit, and that this requirement was jurisdictional. In addition to the authorities therein cited, we add 7 Tex. Jur. 972, § 54; 1 Freeman on Judgments (6th Ed.) § 322; Runck v. Gates (Tex. Civ. App.) 14 S.W.(2d) 885; Christian v. Hood (Tex. Civ. App.) 19 S.W.(2d) 621; Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196.

It is true that C. L. Dial is not claiming an interest in any of the property devised to Mrs. Gertrude Dial and her children, but the

partnership property has never been partitioned. In fact, the record does not show that the partnership affairs of Dial Bros. have ever been finally adjusted and settled. Moreover, there has been no partition between Mrs. Gertrude A. Dial and her children, and, since C. L. Dial and his wife are joint warrantors with Mrs. Gertrude A. Dial in the lease and in the deed, the court was without jurisdiction in said cause No. 639 to decree the validity or invalidity of either the deed or the lease when neither C. L. Dial nor his wife had been made a party.

 The appellants further attack the judgment as being invalid because it shows to have been rendered at a term held by agreement of all the parties to the suit and in vacation. We think this contention is sound.

R. S. art. 1915, provides that, by consent of all the parties, the court may try any civil case except divorce cases. But the children could not consent, and their guardian, because of her adverse interest, could not consent for them.

 Appellants attack the judgment, asserting that it is invalid because it was rendered by a judge who had an approved claim against the estate of J. C. Dial. This stipulation of counsel with reference to this issue is as follows:

"That said judge, who presided at said trial and who entered said judgment, at the time of the rendition of the same, was the owner and holder of a claim, a money demand, against the estate of J. C. Dial, deceased, amounting to about the sum of $400.00; that such claim was filed with said Gertrude A. Dial, executrix of said estate, and had been by her approved, filed and listed as a valid claim, and had been listed in the inventory and list of claims, and duly filed in the County Court of Hemphill County, Texas, in the matter of the estate of J. C. Dial, deceased, which said claim had not been paid at the time of the rendition of said judgment; and that said claim was paid by said Gertrude A. Dial on or about the first day of August, 1926, out of the proceeds derived from said judgment."

The facts recited here do not sustain the contention. Merely because the trial judge is a creditor of one of the parties to the suit does not disqualify him, as judge, unless he is directly interested in the result of the litigation. He must have a direct interest in the cause of action or matter being litigated, so that the result of the suit will necessarily affect him to his personal or pecuniary loss or gain. City of Oak Cliff v. State, 97 Tex. 391, 79 S. W. 1; City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220; Kemp v. Wharton County Bank, 4 Tex. Civ. App. 648, 23 S. W. 916; Nicholson v. Showalter, 83 Tex. 99, 18 S. W. 326.

 By numerous propositions, the appellants assert that it was the duty of C. L. Dial, as the surviving partner, to use reasonable diligence to wind up the affairs of the partnership; that he had no right, either alone or in co-operation with W. H. Dial and Mrs. Gertrude A. Dial, to continue the partnership business of ranching and raising cattle for four years after the death of J. C. Dial; that he had no power and no authority as such survivor to renew notes of the partnership, mortgage its assets to secure such notes and conduct the affairs of the firm after the death of J. C. Dial just as they had previously been conducted, and that such renewal notes for increased amounts and unauthorized transactions resulting in additional liability, in no way affected the rights of these minor plaintiffs.

The pleadings and the evidence in which they attack these numerous transactions are voluminous, and no good purpose can be served in discussing them in detail. Suffice it to say that they raised such issues of fact which required the trial court to submit that part of the case to the jury. There are several bills of exception taken by appellants to the exclusion of testimony which, if admitted, would have tended to show that C. L. Dial, as surviving partner and trustee, had not faithfully discharged the trust; and others which might have shown mismanagement and losses as the result of his failure to use reasonable diligence in winding up the partnership affairs and his continuing to carry on the business for four years after the death of J. C. Dial. The evidence introduced, as well as the testimony of the witnesses excluded, all tended to charge him with negligence and mismanagement of the partnership affairs, and, in the event of a finding against him on such issues, the children's interest in the property could not be charged with losses sustained by him under such circumstances. 47 C. J. pp. 1048, 1052.

 Where a partnership is dissolved by the death of one of the partners, the surviving partner or partners have the right, and, moreover, it is their duty, to wind up the firm's business, and he is, in the eyes of the law, a trustee of the firm assets for that purpose, and as such trustee is entitled to the exclusive possession of all firm assets. Gaut v. Reed Bros. & Co., 24 Tex. 46, 76 Am. Dec. 94; Crescent Ins. Co. v. Camp, 64 Tex. 521; Shivel & Stewart v. Greer Bros., 58 Tex. Civ. App. 115, 123 S. W. 207; Amarillo National Bank v. Harrell (Tex. Civ. App.) 159 S. W. 858; Roberts v. Nunn (Tex. Civ. App.) 169 S. W. 1086.

Unless the articles of partnership provide otherwise, the surviving partner must proceed at once to wind up the partnership affairs, because there can be only a limited continuance of the business and that for the

sole purpose of winding it up. He must wind it up within a reasonable time and account to the heirs and personal representatives of his business associate for any surplus remaining in his hands after the payment of the partnership debts, and, to enable him to effectively wind up the affairs of the partnership, he is entitled to quiet and exclusive possession of all of the firm assets. There seems to be no fixed rule in Texas requiring him to first dispose of personal property for the purpose of paying partnership debts before he can resort to the real estate, if any, of the partnership for that purpose. We have not been able to find any case which announces that the rule of equitable conversion and re-conversion applies in Texas, though we find an intimation to that effect in the case of Baldwin v. Richardson & Co., 33 Tex. 16, the opinion being rendered by the reconstruction court. We doubt whether it is necessary to determine, in the decision of this case, the question of whether the personal property should have first been sold. The general rule seems to be that the surviving partner takes the equitable title to the firm real estate, if necessary, in order to pay firm debts and settle partnership accounts, and he may sell it for that purpose, his deed conveying only an equity to the purchaser, who has the power to compel the holder of the legal title, which would be the minor plaintiffs in this case, to convey such title to them, though it is held that the surviving partner cannot sell real estate unless necessary to pay debts or settle partnership affairs, and a purchaser of land from a surviving partner, with notice that it was partnership property, is bound to know the authority of such partner as to its sale. 2 Modern Law of Partnership (Rowley) § 626; Western Securities Co. v. Atlee, 168 Iowa, 650, 151 N. W. 56; Armor v. Frey, 253 Mo. 447, 161 S. W. 829; 1 Bates on Part. §§ 293, 300; Foster's Appeal, 74 Pa. 391, 15 Am. Rep. 553.

The appellants charged that the partnership property could have been sold advantageously within eight months after the death of J. C. Dial and the affairs of the partnership wound up by the surviving partner, C. L. Dial, within that time; that, instead of winding up the affairs as he was legally bound to do, he continued to carry on the firm business, and formed a new partnership, taking in his father, W. H. Dial, and Mrs. Gertrude Dial as members of the new firm; that in such capacity they incurred additional indebtedness, applying the profits arising from the business to the payment of their debts; that they renewed some of the old obligations evidenced by promissory notes which had been secured by chattel mortgages upon the firm cattle, and had thereby attempted to subject the assets of the old firm and incumber such assets to the payment of the expenses and debts of the new firm. The general rule is that a surviving partner cannot carry on the business after the partnership has been dissolved by the death of one of the firm, nor can he renew existing notes or execute new notes or liens binding and incumbering the firm property, and that all such obligations are his individual debts. Cock v. Carson, 45 Tex. 429; Crawford v. Austin (Tex. Civ. App.) 293 S. W. 275, 279; Kendall v. Riley, 45 Tex. 20; Brown v. Chancellor, 61 Tex. 437; Tootle v. Jenkins, 82 Tex. 29, 17 S. W. 519; Altgelt v. Alamo National Bank, 98 Tex. 252, 83 S. W. 6; 47 C. J. 1046, 1075.

There is testimony which might be considered by a jury as sustaining the appellants' contention that C. L. Dial did not exercise reasonable diligence in winding up the business of the firm. If he did not, then appellants contend he could not convey their interest in the property for any purpose. In other words, the contention is that the surviving partner cannot rightfully convey real estate or even personal property, unless he is in good faith making such conveyances for sufficient consideration in a bona fide effort to wind up the affairs of the firm and to pay partnership obligations. We think this contention is sound. The appellants further insist that the appellees herein, knowing that the land involved was partnership property, acquired no interest, either under the lease or the deed, unless C. L. Dial executed such instrument in a bona fide effort to settle partnership affairs. In this connection, they further insist that the lease was made without adequate consideration; that its execution was not necessary toward winding up partnership affairs; that it was executed after a reasonable time—for all of which reasons it did not divest the minors of their interest in the estate. We think the evidence bearing upon these contentions is sufficient to have required the trial court to submit the issues to the jury. They insist that the deed to Martin and Perkins could not be made by C. L. Dial as surviving partner because he had failed and refused to wind up the affairs of the partnership, and had formed another partnership, which had taken over the assets of the firm of Dial Bros., and therefore he was not possessed of the power and authority vested in a surviving partner; that the deed shows that Mrs. Gertrude Dial and W. H. Dial were without authority to join in, and in so doing they conveyed no interest to which the minors were entitled; that the deed was not made for the purpose of winding up the affairs of the old partnership, but, as recited in the consideration, was executed for the purpose, in part, of paying the community debts of J. C. Dial and his wife; that it was further ineffective as against the children's interest because many of the notes recited in there as part of the consideration represent the indebtedness of the new firm or C. L. Dial

individually, and were not binding against the estate of J. C. Dial or the interest of the minors. They further insist that C. L. Dial could not convey the property even as surviving partner to Martin and Perkins in consideration of the grantees' assumption to pay any indebtedness existing against the old firm of Dial Bros.; and that such assumption is not a valuable consideration where minors' interests are involved. The lease purports to be the act of Dial Bros., and was executed about eight months after the death of J. C. Dial. The consent judgment hereinbefore mentioned attempts to validate this lease and the deed. This could only be done where the children were properly represented. The testimony tends strongly to show that the children's interest in the land has not been properly safeguarded in the various transactions which it is claimed have resulted in divesting them of title.

 It is clear that the appellees could not acquire property belonging to the partnership of Dial Bros., in which the heirs of the deceased partner had an interest, by assuming, or even paying, as a consideration for the conveyance, debts for which the surviving partner personally or the members of a new firm, if any, which he had organized to carry on the business, were solely responsible. If the testimony should show that all or any part of the $96,000 which Martin and Perkins had assumed to pay was not legitimately chargeable to the estate of Dial Bros., then the consideration for the transfer, in so far as the children's interest is concerned, has failed.

The appellants contend that Mrs. Gertrude Dial refused to qualify as independent executrix. The record shows that she executed the deed referred to as independent executrix. Having held that she was not independent executrix, and that she did not secure the orders of the probate court entitling her to make the deed, in so far as the rights of the children are concerned, it is immaterial whether she repudiated the trust or accepted under the will.

 The appellees insist appellants cannot successfully maintain this suit without tendering the amount received and which was decreed to them in the district court judgment. Restoration has been held to be unnecessary where the petitioner is a minor who has wasted the consideration. Wisdom v. Peek (Tex. Civ. App.) 220 S. W. 210. We incline to the opinion that the offer by plaintiffs in their pleadings is a sufficient tender under the facts of this case. The plaintiffs alleged in this connection that the defendants have heretofore paid their guardian under the pretended consent judgment the sum of $106,250; that said defendants now have in their possession large sums of money in excess of the amount paid said guardian, which defendants have derived from the oil and gas

obtained from the land and which they have received as rents, revenues and royalties, all of which sums rightfully belong to plaintiffs. "That plaintiffs here and now tender into this court the said sum of money so paid and any and all sums of money actually paid or received by and from them to plaintiffs and hereby offer to do equity with and to said defendants and ask the court to take into consideration said payments by said defendants to said minor plaintiffs and others for said minors, in making an accounting and equitable adjustment between plaintiffs and defendants and to pay the said defendants as their interest may appear, any and all sums of money that may be due them and to make such payments out of the money now held by said defendants and belonging to plaintiffs." They further offer to reconvey their interest in the twenty-acre lease by relinquishment or assignment as may be sufficient to divest them of title.

The rule, as stated in Graves v. Hickman, 59 Tex. 381, is that, when the petition avers a willingness to repay all sums of money expended for the plaintiff, averring ignorance of the true amount and asks an accounting between plaintiffs and defendants, it is a sufficient tender by a minor without the necessity of making a formal tender of a specific sum. The judgment orders the children's interest paid into the bank selected by the court as depository, and, so far as we are informed, none of the money has ever passed into the possession of either the children or their guardian ad litem Fletcher, and the children could not be required to restore as a condition precedent to recover, unless it was shown that they had actually received the money or a part of it, and that it had not been dissipated by them. Vogelsang v. Null, 67 Tex. 465, 3 S. W. 451; Salser v. Barron (Tex. Civ. App.) 146 S. W. 1039; Hunt on Tender, p. 39, § 49. There is a further rule that, where the transaction is absolutely void, the minors are not required to restore the consideration as a condition to having the relief prayed for. Lee v. Hibernia Savings & Loan Soc., 177 Cal. 656, 171 P. 677.

We entertain serious doubts whether the plaintiffs should be required to even plead a tender, for the reason that this is a suit in the form of trespass to try title, filed by their guardian ad litem to recover for them their interest in the lands described in the petition and to recover damages. It is true that they ask for the cancellation of the mineral lease, the deed, and the judgment as incidental relief, because these instruments are alleged to be clouds upon their title. As we understand the suit, it is not technically one for cancellation and rescission, but, whatever may be the nature of the case, we think the offer to do equity is all that should be required.

 The court did not err in admitting in evidence the mineral lease, the deed, and the

judgment, but, if the issues had been submitted to the jury, there should have been an instruction to the effect that they were not binding as against the plaintiffs. The admission in evidence of the inventory and appraisement filed in the estate of J. C. Dial seems to have been harmless.

■■■■ We think the court erred, however, in refusing to permit plaintiffs' counsel to call C. L. Dial to the witness stand and propound leading questions to him concerning his management and conduct of the firm's business since the death of J. C. Dial. It appears without contradiction that he was the managing member of the firm of Dial Bros., having charge of the ranch and all the property of the partnership. He testified that he kept no books showing how he had conducted the business, but depended upon his memory. It is the duty of the managing partner to keep an accurate account of his transactions with or for the partnership, and, if he fails to keep such account, all doubts respecting particular items will ordinarily be resolved against him on an accounting. Where he has failed to keep accurate accounts, the burden rests upon him, as managing partner, to show that he has performed his duty fairly, impartially, and honestly, and all doubts respecting particular items will ordinarily be resolved against him. 47 C. J. 1245. Under the circumstances, C. L. Dial has the burden of showing the application of firm assets to the payment of firm debts, Marcum's Administrator v. Marcum, 154 Ky. 401, 157 S. W. 1101, and every reasonable presumption must be indulged against him, McKleroy v. Musgrove, 203 Ala. 603, 84 So. 280. Doubt as to the validity of credits which he claims must be resolved against him. Kirwan v. Henry (Ky.) 16 S. W. 828; Navarro v. Lamana (Tex. Civ. App.) 179 S. W. 922. The duty of a partner in control of such a business is analogous to that of a trustee. Raymond v. Vaughan, 128 Ill. 256, 21 N. E. 566, 4 L. R. A. 440, 15 Am. St. Rep. 112.

■■■■ "It is the duty of the survivor to make a full and fair disclosure as to the firm assets to the representative of the deceased partner, to account to such representative in respect of assets which come into the survivor's hands and to pay over to the representative the estate's share of the net partnership assets. The duty to disclose, to account and to pay over are sometimes referred to, or regarder as, the survivor's duty as trustee." 47 C. J. 1060, § 639; Id., 1078, § 674.

■■■■ "If the surviving partner assumes to carry on the partnership business without authority, he is liable for debts incurred during such continuance and if he executes firm notes without authority in the course of continuing the partnership business, he, and not the firm, is liable for their payment." 47 C. J. 1075 §

669; Altgelt v. D. Sullivan & Co. (Tex. Civ. App.) 79 S. W. 333.

Under the rules announced, the plaintiffs were entitled to go into the transactions of C. L. Dial and his dealings with the partnership property, both before and after the death of J. C. Dial, and to lead the witness concerning such matters without restriction.

■■■■ The record does not show that C. L. Dial had qualified as an expert witness, and therefore he should not have been permitted to testify as to the market value of the cattle in the fall of 1918. The testimony of C. L. Dial, in which he details conversations he had with third parties, was clearly inadmissible upon the ground of hearsay. It appeared that some of the notes evidencing obligations of the firm of Dial Bros., and which had been executed prior to the death of J. C. Dial, were shown to have been marked "paid." The court did not err in permitting C. L. Dial to testify with reference to these notes and as to how and when they were paid.

■■■■ Permitting Mrs. Gertrude Dial to testify that she refused to accept as sole executrix under the will, if error, is harmless. As a matter of law, she could only qualify as executrix under the general statute, and her subsequent conduct established the fact that she did act as executrix, although she signed the deed as independent executrix. There was no error in permitting her to testify that she executed the oil and gas lease because Mr. Dial,' her father-in-law, wanted her to execute it. Her motive in doing so is immaterial; the effect of her act in executing it being the only material inquiry in so far as the children's interest is concerned. The testimony, however, may have been admissible in connection with the circumstances under which she executed the deed in her attorney's office at Canadian, upon the issue of fraud raised by her pleadings.

■■■■ The probate proceedings in the guardianship of David and Elizabeth Dial, in Roberts county, were admitted in evidence over the objection of appellants' counsel, the objection being mainly because proceedings had been instituted to set the orders aside and were still pending on appeal in the district court. This objection would not exclude the orders, for the reason that they are presumed to be valid as against a collateral attack, though they might have afforded grounds for postponing the trial of this case until their validity had been finally determined, but no effort was made by the appellants to postpone upon that ground, and this court cannot presume that they will be held invalid.

■■■■ The court did not err in excluding the testimony of Paul J. McIntyre as to the value of the lease, because he was not shown to be qualified to testify upon that issue, but

the court did err in excluding the testimony of Grover Bishop with reference to the market value of the mineral leasehold interest in the land. The appellants are contending that the amount paid for the lease and the land is so grossly inadequate as to amount to fraud upon the minors, who were not represented in those transactions.

The appellees contend that appellants cannot maintain this suit, for the reason that there has been no partnership accounting of the business of Dial Bros. The general rule is that heirs cannot maintain an action for an accounting, and that this can be done only by the representatives of the deceased partner. Gilmore on Partnership, 499, note; 2 Bates on Partnership, § 924; 2 Rowley's Modern Law of Partnership, § 657; 47 C. J. 1158, 1159. An accounting will not be ordered unless it appears that there is necessity for such action, nor should the court order an accounting where it would be futile. The record shows that twelve years have passed since the death of J. C. Dial, that the assets of the firm, both real and personal, have long since been disposed of, and that the only property which the court in this case could effectively dispose of is the plaintiffs' interest in the lands. C. L. Dial testified that the debts of the original firm had all been paid, that he kept no books showing any of the transactions and had no accounts, either for or against the firm of Dial Brothers, but that he trusted entirely to his memory, which, according to the record in this case, seems to have failed him with reference to some important matters. Mrs. Gertrude Dial, under the general rule, might have required an accounting, but even she could not resort to that remedy after so long a time. The children are not chargeable with her failure to have an accounting, since her interest is adverse to theirs, and because, according to some testimony, she may have entered into a new firm, which wrongfully took into possesion the property of the old firm of Dial Bros. The appellees do not state any reason why an accounting is necessary, and, since the children are only suing for their interest in the real estate devised to them by their father's will and the revenues and royalties realized by the appellees, we see no necessity for an accounting. What is here said, however, is without regard to the right of appellants to examine fully into the transactions of C. L. Dial and his management of partnership affairs after the dissolution of the partnership by the death of J. C. Dial, for the purpose of throwing light upon the necessity and propriety of the lease and sale of the lands to appellees. It is conceded that, if C. L. Dial was justified in disposing of partnership real estate for the purpose of paying partnership debts, then appellees have acquired a good title, and all other inquiries become immaterial.

For the reasons hereinabove discussed, we think the court erred in directing a verdict for appellees. The judgment is therefore reversed and the cause remanded.

JACKSON, J., not sitting.

## On Motion for Rehearing.

HALL, C. J.

The appellees insist that we erred in not holding as a matter of law that the oil and gas lease involved in this controversy was valid as against the minor appellants.

In the original briefs, the appellees insist that the rights of a surviving partner are practically the same as the rights of a community survivor with reference to disposing of property and winding up the affairs, and they cite numerous cases, amongst them Clemmons v. McDowell (Tex. Civ. App.) 5 S.W.(2d) 224; Id. (Tex. Com. App.) 12 S.W. (2d) 955. We still adhere to the rules announced in the Clemmons Case, but they have no application to the case before us as made by the appellants' pleading and evidence. Appellants have no quarrel with those cases holding that a community survivor or a surviving partner has the right to dispose of property to pay debts, but they do insist that neither would have the right to take possession of the property and continue the business for private gain to the exclusion of those entitled to have it distributed.

In the case of Spencer et al. v. Pettit et al., 17 S.W.(2d) 1102, affirmed by the Supreme Court, 34 S.W.(2d) 798, this court held that, upon the death of the wife, if the father takes possession of all the community property and carries on the business as it had been previously conducted before the death of his wife, buying other property, selling and exchanging the original property, executing notes, without ever accounting to his children for their interests inherited from their mother, he becomes a constructive trustee; that no burden rests upon the children to trace the community property into other property acquired by the father in his business transactions. The rule is further announced therein that it is the duty of the community survivor to wind up the affairs of the estate with reasonable dispatch, and a failure to do so renders him liable; that his vendees cannot under such circumstances defeat the claims of minor children upon the ground that they were bona fide purchasers of the property from the constructive trustee. The rules announced in that case apply with peculiar force to the instant case. C. L. Dial did not dispose of any property of any consequence nor take any action toward paying the debts of the estate until after eight months from the death of J. C. Dial. As surviving partner, he was trustee to wind up the affairs of the partnership within a reasonable

time. After the expiration of a reasonable time, he became, according to the Spencer v. Pettit Case, a constructive trustee of the children's interest in the partnership property. The general rule is that the surviving partner can make no contract in the name of the old partnership. Neither can he execute any new notes or renew old ones. The lease under which appellees claim purports to be the act of Dial Bros., a firm composed of C. L. and J. C. Dial, by C. L. Dial. The lease recites that J. C. Dial is dead. This alone would prevent the appellees from claiming as bona fide purchasers, but, aside from this the record shows that they knew they were leasing lands, the property of a former partnership of which one member had been dead for more than eight months. They knew as a matter of law that there was no such firm as Dial Bros.

As said in White v. Tudor, 24 Tex. 639, 76 Am. Dec. 126:

"It is clear from the evidence, that the note sued on was executed by Ashworth, after the dissolution of the firm of S. A. White & Co. The law seems to be clearly settled, that after the dissolution of a partnership, one of the partners cannot impose new obligations upon the firm, or vary the form or character of those already existing. (3 Kent's Com. 72.) It is also held, that one partner cannot, after the dissolution of the partnership, endorse a note in the name of the firm, even to pay a prior debt of the firm. (Humphries v. Chastain, 5 Ga. 166 [48 Am. Dec. 247].) It is also held, and may be regarded as settled, that a general authority to one partner, upon a dissolution, to settle the business of the firm, does not authorize him to give a note in the name of the firm, for a firm debt, or to renew one given before the dissolution."

In Lubbock Grain & Coal Co. v. Ferguson (Tex. Civ. App.) 227 S. W. 539, 541, it is said:

"It is settled in this state the general authority one party may have upon dissolution to settle the business of the firm does not authorize him to give a note in the firm name for pre-existing firm debts or to renew a partnership debt then existing"—citing numerous Texas cases.

The appellees knew that Dial Bros., as a firm, had been engaged in the cattle business, using the lands in question for grazing purposes. Upon the death of one member of the firm, it is extremely doubtful whether the surviving partner could execute an oil lease upon all of the pasture land; thus entering into a business altogether different and foreign to that of ranching. If he had authority to so deal with the lands belonging to the dissolved partnership, he might have taken the livestock, moved to some town, and gone into the livery stable business with the horses or started a dairy with the milk cows.

In Crawford v. Austin (Tex. Civ. App.) 293 S. W. 275, 279, it is said:

"As between themselves, neither partner has any power whatever to act for or bind the other after dissolution. This is elementary. And, as regards third persons, the dissolution works an absolute revocation of all implied authority in either of the partners to bind the others to new contracts or obligations, or to create a new cause binding the firm. * * * And this is true even where the consideration is the debt of the firm, and although the act is one which otherwise would have been within the scope of partnership business."

Instead of holding as a matter of law that the lease was valid as against the children, we strongly incline to the opinion that as a matter of law it is void and ineffective, even though it had been executed by C. L. Dial as surviving partner within a reasonable time. But whether he acted within a reasonable time is an issue of fact which the court should have submitted to the jury, and, in the absence of a finding upon that issue, this court would not be authorized to hold either way.

The fact that Mrs. Gertrude Dial joined in the execution of the lease adds nothing to its validity as against her children. Neither she nor the children had any voice in winding up the partnership affairs.

Before the lease can be held to be valid, it must further be shown that its execution was a necessary part of the winding up of the partnership business, and the burden would be upon C. L. Dial and those who claim under him to establish these facts, as we understand the rules announced in the Spencer v. Pettit Case, supra. To the same effect is Moody v. Butler, 63 Tex. 210; Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367; Waterman L. & S. Co. v. Robins (Tex. Civ. App.) 159 S. W. 360.

The appellees next insist that this court erred in refusing to hold as a matter of law that the deed involved in this controversy is a valid conveyance as against the appellants, because, as asserted, it was shown that there were numerous partnership debts still unpaid, many of which had not been renewed; that the partnership affairs had not been wound up when the deed was executed. It is not denied that C. L. Dial had the right to sell even the real estate belonging to the partnership for the purpose of paying partnership debts if this was done within a reasonable time, but appellants raise the issue that four years is not a reasonable time, and that his failure to act within such time renders him a constructive trustee. They further insist that the debts which it is claimed Dial sold the land to satisfy and pay off were not the debts of the old

firm of Dial Bros., but were new debts contracted by C. L. Dial, his father W. H. Dial, and Gertrude Dial. He certainly would not have the right to sell partnership land to pay anything but valid partnership debts, so this was an issue which should have been submitted to the jury, and this court would have erred in holding as a matter of law either way with reference to the deed.

■ Appellees' contention is that there was no money to pay partnership debts, that the cattle belonging to the partnership had to be fed, and there was no money with which to buy feed, and further that to have sold the cattle would have resulted in sacrificing them. Each of these contentions is sharply contested, and neither this court nor the trial court has the right to pass upon them.

The appellees insist that these issues might have been pertinent if this suit were a suit between C. L. Dial as surviving partner and the heirs and legal representatives of the deceased partner for an accounting, but that such issue is wholly immaterial as between the minor plaintiffs and appellees. As heretofore said, the issue of bona fide purchaser is not in this case. The appellees knew that the land had been owned by the partnership which had been dissolved by the death of one of the partners. The record discloses further that they knew the deceased partner had died testate; that he left minor children surviving him. They therefore occupy no more favorable position than did the Spencers in the Pettit Case.

■■ We do not assent to the statement that the uncontroverted evidence shows that C. L. Dial did, in fact, proceed with due diligence in winding up the affairs of the partnership up to the time of the execution of said lease, and the record does not sustain any such assertion. The same condition exists with reference to his use of diligence prior to the execution of the deed more than four years after the death of J. C. Dial. As stated in the original opinion, notwithstanding repeated assertions to the contrary in the motion, there is evidence tending to show that the partnership business was carried on for about four years after the death of J. C. Dial, and there is other evidence which tends to show that C. L. Dial, W. H. Dial, and Mrs. Gertrude A. Dial attempted to form a new partnership in the ranch business, using as the assets of the new firm the land and personal property of the original firm. This they would clearly have no authority to do. Several canceled notes were introduced in evidence which tended to prove that C. L. Dial had attempted to conduct the affairs of the original firm after the death of his brother.

With reference to all of these matters, the contentions are urged purely from the appellees' standpoint, and the motion does not fairly quote either the opinion of this court or the record in relation thereto.

The contention is, on the part of appellants, that the consideration for the lease and the deed is so inadequate as to amount to fraud, that the rights acquired under such instruments were worth several millions of dollars, and, if this contention is true, it certainly would materially affect the validity of appellees' title.

■■■ While there may not have been any testimony excluded which directly tended to show that C. L. Dial had not been diligent in executing the trust imposed upon him as surviving partner, the record is replete with evidence from which the jury might have concluded that he was negligent. He sold none of the cattle to amount to anything for several months, and it is a matter of common knowledge that there is a market for cattle every day in the year, and the same may be truthfully said of real estate and of grazing privileges. He seeks to justify his failure to dispose of the cattle because he claims they had the itch. His testimony upon this point is contradicted by a disinterested witness.

His further testimony is:

"I did not keep any books at that time relative to any sale that I was making and I did not keep any books relative to any expenditures—moneys being expended or disbursed by me at that time. I depended entirely upon my memory, so far as the status and condition of this business is concerned, and on the loans and through the bank. * * * After his (J. C. Dial's) death, I did not assume full control of all assets, cattle, land, and the conduct of the cattle business embracing the assets of the Dial partnership. W. H. Dial and Gertrude A. Dial had control in that connection. * * * I wouldn't have any means of refreshing my recollection as to what cattle I sold in 1919. I might have sold some cows or steers but I don't remember whether it was 1919 or 1920. I do not remember whether the cow and steer trade that I spoke of here with Roy Williams was in 1920 or 1921. * * * I kept no books of expenses for cake, men hired, grass lease and all the incidental expenses and I am unable to tell the Court and jury what was the average of the ranch expenses from year to year for those things. Some winters were worse than others and I don't know what the expenses were."

He was interrogated with reference to a great number of transactions evidenced by notes, mortgages, and other written data, and almost without exception his statement was that he did not remember and could not give any definite idea with reference to any of the transactions. On cross-examination he said:

"At the time I gave my depositions in this case I did not have the records before me that have been exhibited to me this morning.

They are the only records that I know of existing. I turned them over to them about three years ago when they had this other settlement. Turned them over to Mrs. Gertrude Dial's attorneys."

It will be seen from the foregoing excerpts that he did not keep a set of books; that he made no entry in any book or other permanent record of either his expenses or of the sales or purchases of cattle; that he depended entirely upon his recollection and such data in the way of canceled notes and checks as came to him from the various banks with which he transacted business. The jury might have found that this was not such a degree of diligence which the volume of business and the amount of assets intrusted to him demanded that a man of reasonable prudence and business ability would have used. Such a finding would have been tantamount to a finding of negligence and a want of diligence on his part. Of course, if we accept the unsupported statement made in the motion that "the uncontradicted evidence shows" that, at the time the lease was executed, there were many outstanding, unpaid, and unrenewed debts owing by the firm of Dial Bros., there might be some merit in several of the contentions, but the uncontradicted evidence does not show any such thing. It does show notes, many of them executed long after the death of J. C. Dial. Whether these could be charged to the partnership was a sharply contested question.

The appellees attacked the holding of this court that "the testimony tends strongly to show that the children's interest in the land has not been properly safeguarded in the various transactions which it is claimed has resulted in divesting them of title." Having reviewed the record in connection with the motion, we say that it not only tends to show, but conclusively shows, that their interests have not been properly safeguarded. A judgment was entered in which they were not represented by a guardian ad litem or any one else whom a court of equity would recognize as a proper representative. Appellees insist that this statement "clearly reflects upon the ability and diligence, if not the good faith and integrity, of the mother of these children." Also upon their uncle and their grandfather, two district judges, a county judge, and two lawyers. The statement was not made with the intention of reflecting upon any one's honor or ability. It is sustained by the facts, and, if the facts make any such reflection, they will just have to reflect. We did not make the facts. This court has not charged, as counsel for movants well know, that any of the parties have been guilty of moral turpitude, and it is to be regretted when reputable lawyers, in an attempt to file a meritorious motion, must resort to such charges as we have just discussed. As we un-

derstand the law of this case, Mrs. Dial had no interest whatever when the Hutchinson county suit was filed, and yet she recovered one-half of the amount paid by appellees. No one has charged either her or her attorneys with moral turpitude in relation thereto. The most that can be said is, if we are correct, there has been a mistake of law as to the relative rights of the parties, for which appellees' counsel are partially responsible.

So far as the consideration for the deed is concerned, the recital of the consideration therein contained is sufficient to show that the land was not sold entirely for the payment of partnership debts. We have discussed this matter fully in the original opinion, and deem it unnecessary to go further into it.

■■■ Whether the firm indebtedness at the time of the death of J. C. Dial was $150,-000, $100,000, or less, as is contended by appellant, is another sharply contested question which should be submitted to a jury, and we erred in stating in the original opinion that the partnership owed other debts amounting to the sum of $100,000 secured by mortgages on the cattle. Because C. L. Dial was negligent in not keeping a record of these transactions and a proper set of books, it is difficult to tell what the indebtedness was at the time of J. C. Dial's death. If, in acquiring the property or any interest therein, the appellees, as part of the consideration, paid, or assumed to pay, any debts not properly chargeable to the firm, then clearly there has been a failure of consideration to that extent, and the children's interest would not be affected thereby. It is true that C. L. Dial testified that all of the firm debts had not been paid, and he included amongst them a debt to himself in the sum of about $10,000 for cattle originally put into the partnership and his salary for his services in operating the ranch at the rate of $75 per month for a period of four years. The eighteenth proposition in appellants' original brief is that the trial court erred in allowing the witness C. L. Dial to testify, over the timely objections of appellants, that he had an agreement with his brother, J. C. Dial, that he was to draw $75 per month for running the ranch, and that his wife kept house and cooked for the men, and that he had never been paid therefor. We think, under R. S. art. 3716, this testimony was inadmissible. Rascoe v. Walker-Smith Co., 98 Tex. 565, 86 S. W. 728, 729; Lumpkin v. Montgomery (Tex. Civ. App.) 25 S. W. 661.

It is asserted in the motion that "C. L. Dial did not testify that he kept no books or accounts showing any of the transactions, either for or against the firm of Dial Brothers. That he trusted to his memory." We have quoted literally from his testimony above, in which he says that he did not keep

any books and that he depended entirely upon his memory.

Another one of the several unfair and incorrect statements contained in the motion is that this court erred in holding that the minor plaintiffs had, under the terms of the will, a vested remainder. We made no such holding. There is not a syllable in the opinion which can be so construed. We held that under the terms of the will there was a contingent remainder. We further held that the will gave Mrs. Gertrude Dial no power to dispose of the corpus of the property. The express recital is that she is to control and manage the property. Power to manage and control does not authorize an executor to sell and convey. In addition to the case of Blanton v. Mayes, 58 Tex. 422, cited in the original opinion, the same rule is announced in Kennedy v. Pearson (Tex. Civ. App.) 109 S. W. 280; Wells v. Petree, 39 Tex. 429; Anderson v. Stockdale, 62 Tex. 54. This is also the rule in other jurisdictions. Thompson on Construction of Wills, § 591. The office of independent executor carries with it, and necessarily implies, power to sell and dispose of the devised estate, independent of any action by the probate court. It is difficult to understand how an executor who is at the same time a life tenant, with no power express or implied to sell or dispose of the property, can be an independent executor.

■■■■It is further contended that we erred in holding that, because C. L. Dial and his wife and Mrs. Gertrude A. Dial were joint warrantors in the lease and deed, and the fact that no partition was made between Mrs. Dial and her children, the district court of Hutchinson county was without jurisdiction to decree either the validity or invalidity of the deed or lease.

In its essence, the Hutchinson county suit was a proceeding in equity. In 21 C. J. 258, § 253, the rule is correctly stated as follows:

"It is a general rule of equity pleading that all persons who are materially interested in the event of the suit or in the subject-matter, however numerous, should be made parties, either as plaintiffs or as defendants. This rule is everywhere recognized and it is stated in more or less similar terms in almost every case wherein the subject of parties in equity has been under discussion. In code practice the rule remains the same. The reason for the rule is found in the principle of public policy enforced in courts of equity that a decree should finally and completely determine the rights which all persons have in the subject-matter decided so that the parties may safely obey and act upon the decree and a multiplicity of suits or a circuity of proceedings may be avoided. To this end it is necessary to bring all the parties before the court as otherwise

their interests will not be concluded, for as a general rule no binding decree can be rendered against a person who is not a party to the suit."

A further statement of the rule may be found on page 273, § 276, Id., and on page 280. In 9 C. J. 1225, § 126, the rule as it obtains in suits for cancellation and rescission is also stated. The rule in Texas is specifically stated in 47 C. J. 91, § 182, citing more than a dozen Texas cases. We find a further statement of the rule in 7 Tex. Jur. 972, §§ 54, 55, with numerous citations of authorities. See, also, 4 R. C. L. 517; Black on Rescission & Cancellation, §§ 552, 639, 657; 1 Pomeroy's Eq. Jur. (4th Ed.) 114.

As we understand the issues in the Hutchinson county case and the effect of the holding in the authorities just referred to, C. L. Dial and his wife, as well as Mrs. Gertrude Dial, were necessary and indispensable parties, without which the judgment is not voidable but void. The fact that the judgment entered was by consent when the children were not represented by any one legally authorized to represent them merely emphasizes the invalidity of such judgment.

■■■ Movants say: "This court evidently inadvertently did not copy the judgment entry as it actually appears from the record. The part of the judgment entry referred to by the court as copied in the opinion of the court is as follows: 'This day court is in session by consent of all the parties.' The judgment as it actually appears in the record reads as follows: 'This day court in session by consent of all the parties, came on to be heard, etc.'" Reference to the record shows that the word "is" should not be in our quotation, but what difference does it make unless counsel desire to be extremely hypercritical. This court judicially knows that the consent judgment was not rendered at a regular term, because we must take judicial notice of the terms fixed by statute for holding district courts. The necessary inference is that the judgment was rendered at an agreed term, since it does not appear that the proceeding was had at a term specially called or during the extension of a regular term. Since the judgment was rendered by consent, and necessarily at a term held by consent of the parties, the rights of the children, who could not consent to the special proceeding, are in no way affected by such a judgment, if their mother's interest was adverse to theirs, and we think it was.

■■■ The movants say that this court in its opinion held that all of the orders and proceedings under authority of which Mrs. Dial filed the Hutchinson county case were valid proceedings and still subsisting. We did not hold any such thing. What we did say was that the orders of a probate court made

within the scope of its powers were presumptively valid, and could not be collaterally attacked, unless the record affirmatively showed that there had been an unauthorized exercise of jurisdiction in the particular case. We were of the opinion that the probate proceedings did not, upon their face, show a want of authority in Mrs. Dial to enter into the consent judgment, but we have again reviewed the record, and we find that, in the application in which she asked for permission to enter into a compromise judgment, she asserts that she owns a one-half interest of the money to be realized through the consent judgment. As heretofore stated, we think she had disposed of all her interest before this judgment was ever entered, and, when it appeared to the probate court that she was claiming a half interest in what might be obtained through the compromise, her adverse interest then appeared, and the court should not have authorized her to make the settlement. We therefore reform the original opinion to the extent of holding that the application and all of the orders made in pursuance thereof show the invalidity of the whole proceedings upon its face. Since the proceedings upon their face are void, the judgment of the district court based thereon is for such further reason void.

■ Movants further say that, because we have held that the trial court should on another trial instruct the jury that neither the lease, the deed, nor the judgment was binding as against the minor plaintiffs, then this court should either reverse and render the cause or direct the trial court to instruct a verdict for the minor plaintiffs on another trial if the same evidence developed. If the evidence upon another trial with reference to the lease, deed, and judgment is the same as is now reflected by the record, we think the court should instruct the jury that they are invalid. We do not know whether the case has been fully developed or not, but, if the records showed that it had, and the testimony was uncontradicted, as to the extent of the children's recovery in land, royalties, etc., we would not hesitate to reverse and render it here, but, in the condition in which the record reaches us, we are not authorized to do so. As held in the case of Spencer v. Pettit, supra, the burden is upon C. L. Dial and those claiming under him to make a full and fair disclosure of the condition of the estate and the partnership business while under his management and control. It would appear from the record that he was a constructive trustee, and, since the matters inquired about are peculiarly and solely within his knowledge, the appellants had the right to lead him while he was on the witness stand.

We find no other ground in the motion which has not heretofore been fully discussed, and it is overruled.

The appellants have filed a motion calling our attention to some inadvertent statements with reference to the record and requesting further findings in some particulars, and in response to the motion we have corrected our former statements and passed upon the matters requested in what has been heretofore said. In all other matters both motions are overruled.

### On Second Motions For Rehearing.

By permission of the court, the appellees have filed a supplemental motion for rehearing, which has been duly considered, and is in all things overruled.

Permission has been given the appellants also to file a second motion for rehearing. In this motion it is contended that we erred in not holding that C. L. Dial as surviving partner had no power to execute a valid oil and gas lease covering the lands belonging to the partnership prior to the death of J. C. Dial, and insisting that the trial court committed fundamental error in not holding that the surviving partner, C. L. Dial, had no right or power, as a matter of law, to execute the particular oil and gas lease involved in this controversy and that the purported lease is not binding upon the interest of the minor appellants in the lands involved.

It is agreed that the lands formerly belonging to the partnership of Dial Bros. devoted to ranching purposes are the lands involved in this suit. The lease which was executed contains the following recitals:

"That the said lessor, for and in consideration of the sum of ten dollars cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, power stations and structures thereon, to produce, save and take care of said products, all that certain tract of land situated in the County of Hutchinson, State of Texas, described as follows, to-wit: [Here follows description of land as described in plaintiffs' petition, aggregating 11,044 acres.]

"It is agreed that this lease shall remain in force for a term of five years from this date and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration of the premises the said lessee covenants and agrees:

"1st. To deliver to the credit of the lessor, free of cost in the pipe lines to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay to the lessor one-eighth of gas for the gas from each well where gas only is found and marketed, while the same is being used off the premises, and lessor shall have gas free of cost from any such well for all stoves and inside lights in the principal dwelling house on said land during said time by making his own connections with the well at his risk and expense.

"3rd. To pay lessor for gas produced from any well and used off the premises at the rate of——dollars per year, for the time during which time such gas shall be used, said payments to be made each three months in advance.

"If no well be commenced on said land, or other lands leased by the lessee in this prospective oil field, on or before the 30th day of November, 1920, and finished on or before the 30th day of November, 1921, this lease shall terminate as to both parties unless the lessee, or or before six months from this date shall pay to the lessor, or to his credit in the National Bank of Commerce at Amarillo, Texas, or its successors, the sum of $2761.00, which bank shall continue as the depository regardless of change in ownership of said land, which shall operate as a rental to cover the privilege of the commencement of a well for twelve months from this date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of same number of months successively. And it is understood and agreed that the first consideration recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the manner as hereinbefore provided, and it is agreed that upon the resumption of the payments of rentals as above provided that the last preceding paragraph hereof governing the payment of rentals and the effect thereof, shall continue in force as though there had been no interruption in the rental payments.

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee."

■■ The contention of appellants with reference to the lease is that, even if it had been made by one authorized to execute it, it is not a sale of the real estate or of any interest therein in the sense that a surviving partner is authorized by law to sell real estate. That a surviving partner has the right, and, indeed, it is his duty, to convert the assets of the firm, including real estate, into cash for the payment of debts and wind up its affairs, has heretofore been discussed and is settled by the authorities. 2 Rowley, Modern Law of Partnership, 837, § 626, 849, § 631. The rule is equally well settled that the surviving partner cannot sell real estate except when necessary to pay the debts of the dissolved firm or in settlement of partnership affairs. The law contemplates that all sales of the assets of the dissolved firm by a surviving partner, as well as other sales made by trustees, shall be made for cash. The surviving partner is, by construction of law, a trustee holding the assets of the firm in trust for the purpose of paying firm debts and settling and winding up the partnership affairs.

■■ It is said in 1 Perry on Trusts, § 221:

"In order that one may claim protection as a bona fide purchaser, the money must have been actually paid and the conveyance taken before notice is received of the trust. If the money is secured but not paid, notice of the trust will convert the purchaser into a trustee and so if the money is paid but the conveyance is not executed, the weight of authority is that notice of the trust will destroy the protection of the purchaser."

This is especially true with reference to constructive trustees. It is contended that the appellees paid no consideration for the lease at the time of its execution; that, unless there is a necessity to sell for the payment of debts, the surviving partner is not authorized to sell firm lands; that, if he needs money to pay firm debts, he cannot sell on credit or for deferred payments, even if the deferred payments are rendered secure and certain. It must be admitted that the lease, according to the stipulations above set out, is an "unless lease." In an "unless lease" the real consideration is exploration and development of the leasehold for oil, gas, and other minerals. In Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 306, 255 S. W. 601, the Supreme Court said:

"The grant was plainly for the purpose of securing a test of the land [for oil and gas], which, if successful, was to result in the mining and marketing of valuable minerals, for the joint profit of grantors and grantee, their heirs or assigns."

Also: "The vital consideration for the grant was royalties on mineral production."

And: "Testing was merely preliminary to

production, which was the real aim and end of all parties."

It will be observed that appellees, under the lease, had the option of either drilling at any time within five years or the payment of the annual rentals or abandoning the lease. Under an "unless lease," the lessee is neither bound to drill a well nor pay the rentals, and C. L. Dial, as lessor, could not compel the appellees, during the five years, to drill a well, nor could he compel them to pay the annual rentals in the event of their failure to drill, because they had a right to abandon the lease. The $10 paid at the time of the execution of the lease is the only sum which could really be called a consideration aside from development and testing. The annual payment of 25 cents per acre per year cannot be held to be a consideration for the lease, but, as expressed in the lease, it was the consideration, the payment of which enabled the lessee to postpone drilling from year to year during the primary term of five years, and, as stated in the lease, "shall operate as a rental to cover the privilege of [deferring] the commencement of a well for twelve months from this day," and further states, "the first consideration recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred." Since the lease specifically states the purpose and intent of the parties in the annual payment of $2,761, we are not authorized to construe such payment as any part of the real consideration for the instrument. Under its terms, the appellees, as lessees, could, at their option, by paying annually 25 cents per acre, postpone development for five years, and then refuse to drill and let the lease lapse. If it should be held that C. L. Dial was a constructive trustee under the rules announced in the Spencer v. Pettit Case, then the lease as to the minor appellants herein is an absolute nullity. If the tendency or the effect of such an instrument, executed under such circumstances, is to perpetrate a wrong upon the appellants, equity will condemn the transaction without regard to what has been done by the lessee.

As said in 13 C. J. 415, § 348:

"Contracts, the object or tendency of which is to constitute a fraud or breach of trust or breach of duty on the part of one who stands in a fiduciary or confidential relation, are illegal and void as constituting or tending to constitute a fraud on third persons. While it is often said that such agreements are against public policy because it is the policy of the law to secure fidelity in the discharge of their duties by all persons holding such positions of trust and confidence, yet it is more accurate to say that such agreements tending to cause unfaithful conduct by fiduciaries are illegal because they are, in effect, agreements to wrong or defraud the persons whose interests the fiduciaries have in charge."

As we construe the contract, the $10 down payment which C. L. Dial says he received when the lease was executed was the only cash consideration ever paid. The remainder of the consideration was the anticipated royalties to be received if the lessees decided to drill. Since, under the terms of the lease, they were not bound to drill, the tendency of the contract was to deprive the children of their prospective interest in royalties pending the option of appellees for five years, with the possibility of a forfeiture of the lease at the end of that period. The 25 cents per acre being paid for the privilege of postponing development, not being a part of the consideration, according to the express terms of the instrument, does not, in our opinion, add anything to the validity of the instrument.

After a careful consideration of the lease and its terms, we have concluded that it is utterly void in so far as it affects the rights of the minor plaintiffs, and, because it was executed without adequate consideration by one who may be held a constructive trustee. It conveyed none of the interest of the minor appellants to the appellees. Thus Texas Oil & Gas, pp. 66, 67, §§ 44, 45; Stephenson v. Stitz (Tex. Civ. App.) 235 S. W. 271; Summers Oil & Gas, 346, § 109, 339 § 107; Weiss v. Claborn (Tex. Civ. App.) 219 S. W. 884, 885; Ford v. Cochran (Tex. Civ. App.) 223 S. W. 1041; Texas Co. v. Curry (Tex. Civ. App.) 229 S. W. 643; Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309; Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779.

From the above authorities and a consideration of the lease, we have concluded that C. L. Dial, as surviving partner, had no authority to execute the lease in question, and that it is ineffective to convey any interest of the minor appellants in the land involved in this suit. To this extent, appellants' second motion for rehearing is sustained.

## On Appellees' Second Supplemental Motion for Rehearing.

The appellees have filed still another motion for rehearing, and we find it necessary to consider only the first ground, in which it is insisted that we erred in finding that the only cash consideration paid C. L. Dial, the surviving partner, for the oil and gas lease, was $10, and that the real consideration for said lease was the agreement to explore and develop the leasehold estate. The appellees assert that this finding is contrary to the uncontradicted evidence, which shows that a cash considera-

tion of $2,751 was paid by the lessee for said lease.

The $2,751, which is, in fact, 25 cents an acre per annum, is, according to the terms of the contract, the consideration paid by the lessees for the privilege of deferring the sinking of a well for each twelve months, and the written contract so provides. It is true that with reference to thus sum C. L. Dial testified:

"Mr. Durham (the original lessee) paid $2,750.00 a year for that lease. That is, 25¢ an acre. Maybe it was $2,751.00 instead of $2,750.00. He paid that original consideration at the time we first gave him the lease. * * * That lease provides for the payment of 25¢ an acre as rental each year and the rental was paid a·year from the time the lease was executed and they gave us credit for it here in the bank—gave Dial Brothers credit for it in the bank. The rental was paid at the end of the second year, but at the end of the third year it (the land) was sold, I think. This 25¢ an acre that I received on the rental was applied on our notes and·they gave us credit for it, that is, gave Dial Brothers credit on our note. They may have paid the rental for three years, 1919, 20 and 21. They paid it every time it was due."

It will be seen that Dial says that the $2,750 was part of the original consideration, but that is merely his opinion. The construction of the contract, where no mistake is alleged or shown, is the prerogative of the court and not the witness.

The other contentions contained in the motion are overruled.